## JULIUS MORPHIS v. SOUTHERN EXPRESS COMPANY.

(Filed 14 October, 1914.)

1. **Interstate Commerce — State Statutes — Penalties — Federal Statutes— Carmack Amendment—Federal Control.**

    The validity of our statutes imposing a penalty upon a carrier for its failure to pay claims for damages under the conditions therein imposed (Revisal, sec. 2634, amended by chapter 139, Laws 1911) is made dependent, as applied to interstate shipments, upon whether Congress, or the Interstate Commerce Commission acting upon its authority, has assumed control thereof; and our statutes upon this subject having been superseded by Classification No. 22, Rule 9, prescribed by the Interstate Commerce Commission under authority conferred by the act of Congress, known as the Carmack Amendment, an express company cannot now be held liable for the penalty under our statute for failure to pay a claim in the time therein prescribed for interstate shipments.

2. **Same—Interstate Commerce Commission—Prospective Orders—Date of Promulgation—Statutes.**

    Where authority has been conferred by Congress upon the Interstate Commerce Commission to assume control of matters relating to interstate commerce, and in pursuance thereof the Commission promulgates an order relative to such commerce, such order supersedes any State statute on the subject, from the time it was promulgated; and when the cause of action subsequently arises under the State penalty statutes, but before the time is made operative, the State statute is ineffectual, and the penalty allowed by it cannot be recovered.

APPEAL by defendant from *Peebles, J.,* at May Term, 1914, of CHATHAM.

This is an action begun in a court of a justice of the peace, and tried on appeal in the Superior Court, for the recovery of $2 as damages for the loss of a gallon of whiskey shipped from Virginia to the plaintiff at Merry Oaks, North Carolina, and for a penalty of $50 for failure to pay the claim.

The following issues were submitted to the jury:

"1. Was the loss of the shipment of whiskey from Fall Creek, Va., to Merry Oaks, N. C., caused by the defendant?

"2. What amount, if any, is plaintiff entitled to recover of the defendant?"

The jury answered the first issue "Yes" and the second "$52."

The defendant introduced evidence tending to prove that Classification No. 22, Rule 9, prescribed by the Interstate Commerce Commission 24 July, 1913, effective 1 February, 1914, on file with witness and at all offices of the defendant, is as follows: "In the event of a claim being made in writing, the company shall immediately acknowledge its re-

ceipt, and shall within six months from the date thereof notify the claimant in writing of the disposition made thereof. Claims for personal loss or damage shall be given equally prompt disposition."

The defendant requested that the following instructions be given to the jury, which were refused, and the defendant excepted:

"1. This was an interstate shipment of whiskey from Fall Creek, Va., to Merry Oaks, N. C., and all damages for loss of said shipment is governed by what is known as the Carmack Amendment to the Interstate Commerce Act, which provides that 'A common carrier of an interstate shipment is liable to the lawful holder of an express receipt for any loss, damage, or injury to such property caused by it.' If you find from the evidence that the loss of whiskey was not caused by the defendant, then you should answer the first issue 'No' and the second issue 'Nothing.' If you find that it was caused by the defendant, you should answer the first issue 'Yes' and the second issue '$2,' the admitted value of the whiskey.

"2. Congress having taken charge of the subject of payment of claims by express companies for loss or damage to interstate shipments, the State statute on the subject is superseded. I therefore charge you that in no aspect of the case can plaintiff recover penalty of $50 prescribed by the State statute, $2 being the largest amount he can recover, should you answer the first issue 'Yes.' "

There was judgment in favor of the plaintiff, and the defendant excepted and appealed.

*A. C. Ray for plaintiff.*
*H. A. London & Sons for defendant.*

ALLEN, J. The statute imposing a penalty on common carriers for failure to pay claims for damages (Rev., sec. 2634 as amended by ch. 139, Laws 1911) has been declared constitutional and valid, as applied to claims arising on interstate shipments, in many cases in our Reports. These decisions rest upon the position that the statute is neither an interference with nor a burden upon interstate commerce, but is in its aid; and a similar statute of South Carolina was sustained in *A. C. L. v. Mazursky,* 216 U. S., 122, against the objection that it was an interference with interstate commerce.

These authorities commend themselves to our judgment, and would be determinative of the present appeal in favor of the plaintiff if conditions had not changed; but it appears that the Interstate Commerce Commission, acting under the authority conferred by Congress, adopted a rule on 24 July, 1913, to be effective 1 February, 1914, applicable to common carriers, providing that "In the event of a claim being made

in writing, the company shall immediately acknowledge its receipt, and shall within six months of the date thereof notify the claimant in writing of the disposition made thereof. Claims for personal loss or damage shall be given equally prompt disposition"; and the question is now presented for the first time as to the effect of this rule.

If it supersedes State legislation, the plaintiff cannot recover the penalty, and if not, the decisions of this Court and of the Supreme Court of the United States, heretofore rendered, sustain the judgment of the Superior Court. Three cases decided by the Supreme Court of the United States, among others, seem to be decisive of the question: *So. Ry. Co. v. Reid,* 222 U. S., 431; *Nor. Pac. Ry. v. Washington,* 222 U. S., 370, and *So. Ry. Co. v. Beam,* 222 U. S., 444.

In the *Reid case* a judgment of the Supreme Court of North Carolina was reversed, which sustained a statute of the State permitting the recovery of a penalty for failure to receive freight, and upon the distinct ground that Congress, having manifested a purpose to take charge of the regulation of freights by the enactment of the Interstate Commerce Act and the amendments thereto, having taken possession of the field, as it is said, this superseded action by the State.

The Court said: "The Supreme Court of the State was of the view that the statute simply regulated a duty which preceded the entry of the goods in interstate commerce, and concluded, therefore, that the statute was 'neither an interference with nor a burden upon interstate commerce'; and it decided that the execution of this duty was not precluded by the provision of the Interstate Commerce Act requiring a schedule of tariffs to be established and charged. It was said by the Court that it was the duty of the railway company to file such schedule, and that the company could not justify the violation of its common law by the neglect of its statutory duty. The case, however, is not quite in such narrow compass. . . . There may be a Federal exertion of authority which takes from a State the power to regulate the duties of interstate carriers or to provide remedies for their violation. . . . It is well settled that if the State and Congress have a concurrent power, that of the State is superseded when the power of Congress is exercised. The question occurs, To what extent and how directly must it be exercised to have such effect? It was decided in *Missouri Pacific Railway Co. v. Larabee Mills,* 211 U. S., 612, that the mere creation of the Interstate Commerce Commission and the grant to it of a large measure of control over interstate commerce does not, in the absence of action by it, change the rule that Congress by nonaction leaves power in the States over merely incidental matters. 'In other words,' and we quote from the opinion (p. 623), 'the mere grant by Congress to the Commission of certain National powers in respect to interstate commerce does not of itself and

in the absence of action by the Commission interfere with the authority of the State to make those regulations conducive to the welfare and convenience of its citizens. . . . Until specific action by Congress or the Commission, the control of the State over those incidental matters remains undisturbed.' . . . The principle of that case, therefore, requires us to find specific action either by Congress in the Interstate Commerce Act or by the Commission covering the matters which the statute of North Carolina attempts to regulate."

In the subsequent case of *So. Ry. Co. v. Beam,* the Court comments on the *Reid case,* and says: "We have shown in the opinion in No. 487, *ante,* p. 424, that there need not be directly 'inhibitive congressional legislation,' but congressional legislation which occupies the field of regulation and thereby excludes action by the State."

These cases establish the proposition that action by Congress or by the Interstate Commerce Commission prevents action by the State, and as the rule adopted on 24 July, 1913, clearly covers the subject-matter of the statute, the statute is no longer operative as to interstate shipments.

It is urged, however, on behalf of the plaintiff that his right to the penalty accrued under the statute on 11 October, 1913, four months after the claim was filed, and that as the rule, although adopted 24 July, 1913, did not become effective until 1 February, 1914, it cannot affect the right to recover in this action, although adopted before he was entitled to sue. This question also seems to be settled against the plaintiff. On 4 March, 1907, Congress passed an act regulating the hours of labor of employees engaged in interstate commerce, and provided that it should not go into effect for one year. In June, 1907, the State of Washington passed an act dealing with the same subject, and the question under review in *Nor. Pac. Ry. v. Washington,* 222 U. S., 370, was an alleged violation of the State statute occurring in July, 1907, and it was held that although the congressional act did not go into effect for one year after its passage, that all State laws on the subject became inoperative after its enactment. The Court says: "Conceding the paramount power of Congress, the operative force of the State law was solely maintained over the interstate commerce in question because of the provision of the act of Congress providing that it should not take effect until one year after its passage. As a result, the act was treated as not existing until the expiration of a year from its passage. . . . But we are of opinion that this view is not compatible with the paramount authority of Congress over interstate commerce. It is elementary, and such is the doctrine announced by the cases to which the Court below referred, that the right of a State to apply its police power for the purpose of regulating interstate commerce, in a case like this, exists only from the silence of

Congress on the subject, and ceases when Congress acts on the subject or manifests its purpose to call into play its exclusive power. This being the conceded premise upon which alone the State law could have been made applicable, it results that as the enactment by Congress of the law in question was an assertion of its power, by the fact alone of such manifestation that subject was at once removed from the sphere of the operation of the authority of the State. To admit the fundamental principle and yet to reason that because Congress chose to make its prohibitions take effect only after a year, the matter with which Congress dealt remained subject to State power, is to cause the act of Congress to destroy itself; that is, to give effect to the will of Congress as embodied in the postponing provision for the purpose of overriding and rendering ineffective the expression of the will of Congress to bring the subject within its control—a manifestation arising from the mere fact of the enactment of the statute.

"But if we pass these considerations and consider the issue before us as one requiring merely an interpretation of the statute, we are of opinion that it becomes manifest that it would cause the statute to destroy itself to give to the clause postponing its operation for one year the meaning which must be affixed to it in order to hold that during the year of postponement State police laws applied. In the first place, no conceivable reason has been, or we think can be, suggested for the postponing provision if it was contemplated that the prohibitions of State laws should apply in the meantime. This is true, because if it be that it was contemplated that the subject dealt with should be controlled during the year by State laws, the postponement of the prohibitions of the act could accomplish no possible purpose."

We are therefore of opinion there was error in refusing to give the instructions prayed for, and a new trial is ordered.

The defendant does not resist a recovery of $2, the amount of the damages, and the costs.

New trial.