# NORTHERN PACIFIC RAILWAY CO. *v.* STATE OF WASHINGTON EX REL. ATKINSON, ATTORNEY GENERAL.

## ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 136. Submitted December 19, 1911.—Decided January 9, 1912.

A train moving and carrying freight between two points in the same State, but which is hauling freight between points one of which is within and the other without the State, or hauling it through the State between points both without the State, is engaged in interstate commerce and subject to the laws of Congress enacted in regard thereto. *Southern Railway Co.* v. *United States*, 222 U. S. 20.

The right of a State to apply its police power to subjects under the exclusive control of Congress, but in regard to which Congress has

been silent, ceases as soon as Congress acts on the subject and manifests its purpose to call into effect its exclusive power.

Congress by enacting a statute in regard to a subject within its exclusive power manifests its purpose to call that power into effect, and at once removes that subject from the sphere of state action and even if Congress provides that the statute shall not go into effect until a subsequent date the States lose control of that subject during the intermediate period from the enactment to the active operation of the statute.

The enactment by Congress of the Hours of Service Law, March 4, 1907, c. 2939, 34 Stat. 1415, was a manifestation by Congress of its intent to bring the subject of hours of labor of employés of interstate carriers under its control; and, although the act did not go into effect for a year after its passage, the various state laws on the subject became inoperative at once on the enactment.

In this case the court referred to the report of the committee of Congress having the legislation in charge as indicating the intent of Congress in enacting the statute.

53 Washington, 673, reversed.

THE facts are stated in the opinion.

*Mr. Charles W. Bunn* for plaintiff in error:

In the absence of legislation by Congress the state statute would have been a valid exercise of the police power of the State and free from constitutional objection, even as to railroad employés engaged in interstate commerce. But as Congress, by the act of March 4, 1907, completely regulated the hours of labor of the employés in question, the act of the legislature of Washington was void as to such employés.

After March 4, 1908, the state law clearly was inoperative, *Baltimore & Ohio R. R. Co.* v. *Interstate Commerce Commission,* 221 U. S. 612; *State* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 136 Wisconsin, 407, and during the year intervening between March 4, 1907, and March 4, 1908, Congress, in effect, had declared that commerce should be free from regulation in this respect. Had Congress thought the time ripe to put such regulation into effect,

it would have made its act immediately operative.  Congress would not without some reason it thought good deliberately enact such a law, and say it should not take effect until a year later.  See report of Mr. Esch, from Committee on Interstate and Foreign Commerce, No. 7641, February 16, 1907, p. 6; also see speech of Mr. Stevens, of Minnesota, Cong. Rec., Feb. 18, 1907, pp. 3248, 3251.  This report and recommendation were adopted by Congress.  Senate bill, No. 5133, was to take effect immediately, but Congress agreed to the House amendments—including the one postponing the effective date of the law to one year after its passage.

The case of safety appliances is strictly analogous to this in granting delay, as it was obvious that the railway equipment of the country could not be changed in a day to meet the requirements of the law.  In case of hours of labor, as in that of safety appliances, it is plain that the new requirements could not be made effective in a day. Some time at least was necessary for preparation.  In either case the determination of Congress that a certain time was necessary is conclusive against state action in the meantime.  It is not to be expected that Congress in any such case would insert in its act an express prohibition on the States.  *Houston* v. *Moore*, 5 Wheat. 1, 21; *Prigg* v. *Pennsylvania*, 16 Pet. 539, 617; *Pennsylvania* v. *Wheeling Bridge Co.*, 13 How. 518; *Sinnot* v. *Davenport*, 22 How. 227; *Nashville, C. & St. L. Ry. Co.* v. *Alabama*, 128 U. S. 96.

It is a well-known historical fact that the principal cause which led to the enactment of the Constitution was the intolerable interference with commerce by the different States.

Commerce is a delicate thing, easily interfered with and retarded.  Whenever Congress takes cognizance of any phase of interstate commerce it must be presumed that it has regulated as far as it thinks the subject ought to be

regulated. It is just as if Congress declared in terms that
no further regulation should be made.

Congress, knowing that before the sixteen-hour law
could, with fairness or safety, be put into effect it would be
necessary to change many division points, and train runs,
to create new divisions, to increase the number of em-
ployés, to change the residence of many of them, and to
make numerous other rearrangements, saw fit to say one
year's time should be allowed for these purposes. But the
legislature of Washington saw fit to say that, in its opin-
ion, less time for the change was necessary. The state
legislation is in conflict with and has attempted to over-
rule the determination of Congress.

The question involved has been decided by the supreme
courts of at least three other States. Missouri and Wis-
consin have decided in favor of appellants' contention, and
Montana against it—see *State* v. *Missouri Pacific Ry. Co.*,
111 S. W. Rep. 500; *State* v. *Chic., Mil. & St. P. Ry. Co.*,
136 Wisconsin, 407. In *State* v. *Nor. Pac. Ry. Co.*, 93 Pac.
Rep. 945, the Supreme Court upheld the state act on the
authority of *Smith* v. *Alabama*, 124 U. S. 465, and *Sherlock*
v. *Alling*, 93 U. S. 99, but these cases not only do not
support the conclusion but are hardly in point. So also
as to the case of *Larrabee* v. *Talbott*, 5 Gill, 429, on which
the court below based its decision.

*Mr. W. V. Tanner*, Attorney General of the State of
Washington, for defendant in error:

An act regulating the hours of labor of employés en-
gaged in train service on railroads is within the police
power of the State. *Cleveland &c. Railway Co.* v. *Illinois*,
177 U. S. 514, and cases there cited.

While a State may not "regulate" interstate or foreign
commerce, yet state authority over the same is not wholly
excluded in the absence of congressional action, for state
legislation in many ways may affect such commerce and

the persons engaged therein without constituting a "reg-
ulation" of it within the meaning of the Federal Constitu-
tion.

The question of conflict is to be determined by the or-
dinary rules of statutory construction, and it should not
be held that the state legislation has been superseded
except in cases of manifest repugnancy. *Reid* v. *Colorado*,
187 U. S. 137, 148; *Missouri &c. Railroad Co.* v. *Haber*,
169 U. S. 613, 623.

There is no repugnancy between the act of Congress
effective March 4, 1908, and the act of the legislature
effective July 12, 1907, during the interim preceding the
taking effect of the act of Congress.

As a general rule a statute speaks from the time it
goes into effect, whether that time be the day of its en-
actment or some future day to which the power enacting
the statute has postponed the time of its taking effect.
*Rice* v. *Ruddiman*, 10 Michigan, 125; *Price* v. *Hopkins*,
13 Michigan, 318; *Grant* v. *Alena*, 107 Michigan, 335;
*H., H. & S. A. Railway Co.* v. *State*, 81 Texas, 572; *Jack-
man* v. *Garland*, 64 Maine, 133; *Evansville &c. R. R. Co.*
v. *Barbee*, 59 Indiana, 592; 26 Am. & Eng. Ency. of Law,
565

The identical question before the court in the case at
bar was considered by the Supreme Court of Montana in
*State* v. *Northern Pacific Ry. Co.*, 36 Montana, 582, in
which the court held that in the absence of some express
or implied declaration of a purpose that such shall be the
result, legislation is not effective for any purpose until it
becomes effective. The act of Congress contains no such
declaration, and the state statute, which was valid and
in force at the time of its passage, remains in force until
the act of Congress becomes effective.

This question has been passed upon by the supreme
courts of four of the States. In Montana and Washing-
ton it has been held that the act of Congress is not repug-

nant to acts theretofore adopted by the state legislatures. In Missouri and Michigan the courts have reached the contrary conclusion. *State v. Chicago, M. & St. P. Ry. Co.,* 136 Wisconsin, 407; 117 N. W. Rep. 686, and *State v. Missouri Pacific Ry. Co.,* 212 Missouri, 658; 111 S. W. Rep. 500. The decision of the Supreme Court of Washington is supported by the better reasoning.

Mr. Chief Justice White delivered the opinion of the court.

On July 3 and 4, 1907, the Northern Pacific Railway Company, in operating a train on its road in the State of Washington, permitted some of the train crew to remain on duty more than sixteen consecutive hours. This being apparently contrary to the prohibition of the act of Congress known as the "Hours of Service" law, approved March 4, 1907, c. 2939, 34 Stat. 1415, if the railroad company in the operation of the train was subject to the power of Congress and the prohibitions of the act were otherwise applicable, there was a violation of the act and a liability to its penalties.

The train, although moving from one point to another in the State of Washington, was hauling merchandise from points outside of the State destined to points within the State and from points within the State to points in British Columbia, as well as in carrying merchandise which had originated outside of the State and was in transit through the State to a foreign destination. This transportation was interstate commerce, and the train was an interstate train, despite the fact that it may also have been carrying some local freight. In view of the unity and indivisibility of the service of the train crew and the paramount character of the authority of Congress to regulate commerce, the act of Congress was exclusively controlling. *Southern Railway Co.* v. *United*

*States,* 222 U. S. 20. But while thus governed by the act of Congress the prohibitions of that act were not operative. This follows, by reason of the provisions of § 5 to the following effect: "That this Act shall take effect and be in force one year after its passage."

About a month before the occurrences heretofore referred to, that is, on June 12, 1907 (Laws 1907, p. 25, c. 20) a law of the State of Washington regulating the hours of service of railway employés became effective. Without going into detail it suffices to say that the provisions of that act greatly resembled those of the act of Congress and prohibited the consecutive hours of service which had taken place on the train of the Northern Pacific road. The Attorney General of the State commenced the proceeding now before us to recover penalties for the violation of the state law. The railroad answered, admitted the acts complained of, but denied any liability for the penalties imposed by the state law. The denial was based upon the assertion that the train was an interstate train, and was not subject to the control of the State because within the exclusive authority of Congress, manifested by the enactment of Congress on that subject. The trial court granted a motion for judgment upon the pleadings and awarded one thousand dollars penalty, and it is to a judgment of the Supreme Court of the State affirming such action that this writ of error is prosecuted.

Considering the character of the transportation, the court below held that the train was an interstate train, and within the potentiality of the exercise by Congress of its power to regulate commerce. Despite this, it was held that the penalty had been rightly imposed, because until Congress had acted upon the subject it was competent for the State to make a regulation concerning the hours of service of employés on railroad trains moving within the State, and to apply such regulation to a train engaged in interstate commerce. This, however,

was based, not upon a supposed concurrent state and Federal power, but solely on the ground that Congress had not acted on the subject, and therefore the state regulation should be applied.   Indeed, the court in express terms declared that if Congress had legislated "its act supersedes any and all state legislation on that particular subject," and it was stated that the State in argument had so conceded.

The court said (53 Washington, 673, 676):

"On the other hand, it is conceded by the State that the power of the Congress to regulate interstate commerce is plenary, and that, as an incident to this power, the Congress may regulate by legislation the instrumentalities engaged in the business, and may prescribe the number of consecutive hours an employé of a carrier so engaged shall be required to remain on duty; and that when it does legislate upon the subject, its act supersedes any and all state legislation on that particular subject.   In fact, these propositions can hardly be said to be debatable in the state courts, since the Federal courts, whose decisions are authoritative on questions of this character, have repeatedly announced them as governing principles in determining the validity of regulative legislation concerning carriers of interstate commerce. *Escanaba &c. Transp. Co.* v. *Chicago*, 107 U. S. 678; *Morgan &c. S. S. Co.* v. *Louisiana Board of Health*, 118 U. S. 455; *Nashville &c. R. Co.* v. *Alabama*, 128 U. S. 96; *Gladson* v. *Minnesota*, 166 U. S. 427; *Lake Shore &c. R. Co.* v. *Ohio*, 173 U. S. 285; *Erb* v. *Morasch*, 177 U. S. 584."

Thus, conceding the paramount power of Congress, the operative force of the state law was solely maintained over the interstate commerce in question because of the provision of the act of Congress providing that it should not take effect until one year after its passage.   As a result, the act was treated as not existing until the expiration of a year from its passage.   Copiously referring

to authorities as to when a legislative act was to be treated as taking effect, the court said (p. 678):

". . . It seems clear that the Federal statute did not speak as a statute until after March 4, 1908, the date on which it went into effect; for if a law passed to take effect at a future day must be construed as if passed on that day, and if, prior to the time it goes into effect, no rights can be acquired under it and no one is bound to regulate his conduct according to its terms, it is idle to say that it has the effect of a statute between the time of its passage and the time of its taking effect. A statute cannot be both operative and inoperative at the same time. It is either a law or it is not a law, and, without special words of limitation, when it goes into effect for one purpose it goes into effect for all purposes."

But we are of opinion that this view is not compatible with the paramount authority of Congress over interstate commerce. It is elementary, and such is the doctrine announced by the cases to which the court below referred, that the right of a State to apply its police power for the purpose of regulating interstate commerce, in a case like this, exists only from the silence of Congress on the subject, and ceases when Congress acts on the subject or manifests its purpose to call into play its exclusive power. This being the conceded premise upon which alone the state law could have been made applicable, it results that as the enactment by Congress of the law in question was an assertion of its power, by the fact alone of such manifestation that subject was at once removed from the sphere of the operation of the authority of the State. To admit the fundamental principle and yet to reason that because Congress chose to make its prohibitions take effect only after a year, the matter with which Congress dealt remained subject to state power, is to cause the act of Congress to destroy itself; that is, to give effect to the will of Congress as embodied in the postpon-

ing provision for the purpose of overriding and rendering ineffective the expression of the will of Congress to bring the subject within its control—a manifestation arising from the mere fact of the enactment of the statute.

We do not pause to cite authorities additional to those referred to by the court below, but we observe in passing that the aspect in which we view the question was cogently stated by the Supreme Court of the State of Missouri in *State* v. *Missouri Pacific Ry. Co.*, 212 Missouri, 658, and has also been lucidly expounded by the Supreme Court of the State of Wisconsin in *State* v. *Chicago, M. & St. P. Ry. Co.*, 136 Wisconsin, 407.

But if we pass these considerations and consider the issue before us as one requiring merely an interpretation of the statute, we are of opinion that it becomes manifest that it would cause the statute to destroy itself to give to the clause postponing its operation for one year the meaning which must be affixed to it in order to hold that during the year of postponement state police laws applied. In the first place, no conceivable reason has been, or we think can be, suggested for the postponing provision if it was contemplated that the prohibitions of state laws should apply in the meantime. This is true because if it be that it was contemplated that the subject dealt with should be controlled during the year by state laws, the postponement of the prohibitions of the act could accomplish no possible purpose. This is well illustrated by this case, where, by the ruling below, a state regulation substantially similar to that contained in the act of Congress is made applicable. In the second place, the obvious suggestion is that the purpose of Congress in giving time was to enable the necessary adjustments to be made by the railroads to meet the new conditions created by the act, a purpose which would of course be frustrated by giving to the provision as to postponement a significance which would destroy the very reason which

caused it to be enacted. Finally, the convictions which arise from the fact of the postponement are made plain by a report on the bill made to the House of Representatives by the Committee on Interstate and Foreign Commerce, wherein it was said (Report No. 7641, dated February 16, 1907, p. 6):

"Owing to the probable necessity of changing in some instances division points, entailing the removal of employés, and to permit ample time to readjust themselves to the requirements of the law, it is not to become operative for one year after its approval."

For the reasons stated the judgment of the Supreme Court of the State of Washington must be and it is

*Reversed, and the cause will be remanded for further proceedings not inconsistent with this opinion.*