**UNION PACIFIC RAILROAD COMPANY; Chicago, Milwaukee, St. Paul and Pacific Railroad Company; Chicago, Burlington & Quincy Railroad Company; Great Northern Railway Company; and Northern Pacific Railway Company, Plaintiffs,**

v.

**Bob WOODAHL, Attorney General of the State of Montana; John L. Adams, Jr., as County Attorney of Yellowstone County, Montana, and as Class Representative on behalf of each and every County Attorney in the State of Montana, Defendants.**

Civ. No. 810.

United States District Court,
D. Montana,
Billings Division.

Feb. 10, 1970.

Cale Crowley, Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for plaintiffs.

Robert L. Woodahl, Atty. Gen. of Montana, Helena, Mont., and Charles C. Lovell, Asst. Atty. Gen., Great Falls, for defendants.

## OPINION AND ORDER

BATTIN, District Judge.

In this action under the Declaratory Judgment Act, 28 U.S.C. Section 2201, plaintiff railroad companies seek a judgment declaring certain Montana statutes unconstitutional under the Supremacy Clause of the United States Constitution.[1] Plaintiffs also seek to have de-

---

1. The "Supremacy Clause" of the United States Constitution, Article VI, Clause 2, provides as follows:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

fendants enjoined from prosecuting any actions pursuant to the Montana statutes. A motion for summary judgment has been filed by plaintiffs with a brief in support thereof. With a supporting brief, defendants have filed consolidated motions which may be summarized as follows:

1. A motion to dismiss the complaint on the grounds that:
 (a) The complaint fails to state a claim upon which relief can be granted;
 (b) The court lacks jurisdiction over the subject matter of the suit;
 (c) Relief may only be granted by a three-judge panel;
 (d) No justiciable controversy exists;
 (e) The suit is an improper class action; and
 (f) The State of Montana has not consented to the suit.

2. A motion for an order changing venue to the Helena Division of the United States District Court for the District of Montana.

Plaintiffs have filed an affidavit of an attorney who appeared in behalf of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company during the 1969 Montana Legislative Assembly. The affidavit states in part that employees of plaintiffs have indicated that efforts will be made to enforce the state law without regard to whether the operation of railroads in Montana affects interstate commerce. John L. Adams, one of the defendants, has filed an affidavit in which he states that he knows of no criminal charges which have been filed against any of the plaintiffs in Yellowstone County, or in any other county for violation of Section 41–1124, Revised Codes of Montana, 1947. He further states that he knows of no such criminal charges which are contemplated.

## THE STATUTES

The 1907 Montana Legislature passed a statute[2] regulating the hours of labor of certain employees of railroads operated "in whole or in part" within the state. The statute was approved on February 5, 1907. The 1969 Montana Legislature amended the statute by deleting the word "steam" before "railroads" at the beginning of the first sentence, and reducing the maximum consecutive hours of labor from sixteen to twelve. As it appears today, therefore, the statute provides as follows:

"*Railway employees—hours of labor.* On all lines of railroads or railways operated in whole or in part within this state, the time of labor of locomotive engineers, locomotive firemen, conductors, trainmen, operators, and agents acting as operators, employed in running or operating the locomotive engines or trains on or over such railroads or railways in this state, shall not at any time exceed twelve (12) consecutive hours, or to be on duty for more than sixteen (16) hours in the aggregate in any twenty-four (24) hour period. At least eight (8) hours shall be allowed them off duty before said engineers, firemen, conductors, trainmen, operators, and agents acting as operators, are again ordered or required to go on duty; provided, however, that nothing in this section shall be construed to allow any engineer, fireman, conductor, or trainman to desert his locomotive or train in case of accident, storms, wrecks, washouts, snow blockade, or any unavoidable delay arising from like causes, or to allow said engineer, fireman, conductor, or trainman to tie up any passenger or mail train between terminals."

Sec. 41–1123, Repl. Vol. 3 (Part 2), Revised Codes of Montana, 1947.

On March 4, 1907, less than a month after the original Montana statute was

---

2. As enacted, the statute appears in Laws of Montana, 1907, Chapter 5, Section 1. It became Section 1741, Revised Codes of Montana, 1907. It was re-enacted in 1921 as Section 3081, and re-enacted in 1947 as Section 41–1123.

approved, Congress enacted a similar law regulating the hours of service of railroad employees. 34 Stats. 1415–1417, March 4, 1907, Chapter 2939, Section 1, 45 U.S.C. Sections 61–64. Section 61, 45 U.S.C., provides that the term "employees" means "persons actually engaged in or connected with the movement of any train." Section 62, 45 U.S. C., relating to the hours of labor provides in part as follows:

"It shall be unlawful for any common carrier, its officers, or agents, subject to sections 61–64 of this title to require or permit any employees subject to said sections to be or remain on duty for a longer period than sixteen consecutive hours, and whenever any such employee of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employee who has been on duty sixteen hours in the aggregate in any twenty-four-hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty: * * *."

Both the Montana and the federal acts provide criminal sanctions for violations of the maximum hours of labor.[3] The maximum penalty under the Montana law is a five hundred dollar fine or sixty days in jail. In addition, the railroad is liable in damages for injuries resulting from the violations. The maximum penalty under the federal law is a fine of five hundred dollars.

## CONTENTIONS OF THE PARTIES

Plaintiffs contend that the federal statute became the supreme law of the land upon its enactment, and that the Montana statute then became void. Plaintiffs further contend that the con-

---

3. The penalty provision under the Montana law, Section 41–1124, R.C.M.1947, provides as follows:

"Any railroad company or superintendent, train dispatcher, trainmaster, master mechanic, or other railroad or railway official, who shall order or require any locomotive engineer, locomotive fireman, conductor, trainman, operator, or agent acting as operator, to labor contrary to the provisions of the preceding section, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than one hundred dollars or more than five hundred dollars, or by imprisonment of not less than thirty days or more than sixty days in the county jail; and all railroad or railway corporations operating lines of railroads or railways in whole or in part in this state shall be liable in damages for all injuries to any person or persons resulting from violations of the provisions of said section."

The penalty provision under the federal statute, 45 U.S.C. Section 63, as amended in 1957, provides:

"Any such common carrier, or any officer or agent thereof, requiring or permitting any employee to go, be, or remain on duty in violation of section 62 of this title shall be liable to a penalty of not less than $200 nor more than $500 for each and every violation, to be recovered in a suit or suits to be brought by the United States attorney in the district court of the United States having jurisdiction in the locality where such violations shall have been committed; and it shall be the duty of such United States attorney to bring such suit upon satisfactory information being lodged with him; but no such suit shall be brought after the expiration of one year from the date of such violation; and it shall also be the duty of the Secretary of Transportation to lodge with the proper United States attorney information of any such violations as may come to his knowledge. In all prosecutions under sections 61–64 of this title the common carrier shall be deemed to have knowledge of all acts of all its officers and agents: *Provided*, That the provisions of said sections shall not apply in any case of casualty or unavoidable accident or the act of God; nor where the delay was the result of a cause not known to the carrier or its officer or agent in charge of such employee at the time said employee left a terminal, and which could not have been foreseen: *Provided further*, That the provisions of said sections shall not apply to the crews of wrecking or relief trains."

flict between the statutes is clear and cannot be reconciled by statutory construction; that a three-judge court would not have jurisdiction because only the federal supremacy clause is involved; that jurisdiction to enter a declaratory judgment is vested in this court because, under 28 U.S.C. Section 1337, the action arises under an Act of Congress regulating commerce; and that this suit is not premature because the state has threatened enforcement of the statute. Defendants, on the other hand, contend that this court should abstain from declaring the Montana law unconstitutional because the law has not been construed in the courts of the state and no threat of irreparable harm exists. Defendants further contend that the suit is prohibited by the Eleventh Amendment to the United States Constitution because it is against a sovereign state by citizens of other states; that the suit is premature because the state has not manifested an intent to enforce the statute; that there is no actual controversy to support a suit for a declaratory judgment; and that a three-judge tribunal is required by 28 U.S.C. Section 2281. Defendants also assert that the suit is an improper class action and that venue must be changed to the Helena Division.

### CONCLUSIONS OF LAW

#### VENUE

Rule 4 of the Rules of Procedure of the United States District Court for the District of Montana provides in part:

"All civil cases are assignable to that Division of the District wherein they properly belong by conformity as near as may be possible to the laws of the State of Montana governing the place of trial in the Courts thereof, * * *"

Defendants contend that the Montana Supreme Court held in State ex rel. Fulton v. District Court, 139 Mont. 573, 366 P.2d 435 (1961) that actions against public officials acting in their public capacity must be brought in the First Judicial District (Helena). The case does not propose such a broad rule. The action was for a writ of prohibition against the District Court for Montana's Eighth Judicial District wherein a suit was filed against the State Board of Equalization. The court stated, at 139 Mont. 581, 366 P.2d 440:

"While not necessary to a determination of the issue before us, we should mention that section 93–2902, R.C.M., 1947, would require the venue of this action to be in the First Judicial District, and section 84–1508, R. C.M., 1947, also requires it."

Section 84–1508, R.C.M.1947, has no application here, since it empowers the District Court for the First Judicial District to compel the attendance of witnesses to testifiy before the State Board of Equalization. Section 93–2902, R.C. M.1947, however, does apply. It provides in part:

"Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the like power of the court to change the place of trial:

\* \* \* \* \* \*

"2. Against a public officer, or person specially appointed to execute his duties, for an act done by him in virtue of his office; or against a person who, by his command or in his aid, does anything touching the duties of such office."

Section 93–2904 provides that in all other cases the action will be tried "in the county in which the defendants, or any one of them, may reside at the commencement of the action." On the basis of these statutes plaintiffs argue that either the Helena Division or the Billings Division of the United States District Court for the District of Montana is a proper venue for this action. In the opinion of the court, plaintiffs' view is in "conformity as near as may be possible to the laws of the State of Montana." Some of the defendants reside in each division and part of the basis of the action involves each division. Furthermore, the Billings Division encom-

passes twenty counties. Hence, twenty of the defendants to this suit, including the named defendant County Attorney of Yellowstone County, reside in the Billings Division. The Helena Division encompasses three counties. Only four defendants to this suit, therefore, including the Attorney General, reside in the Helena Division.

■■ The purpose of a venue statute is to provide a convenient place of hearing for both parties, considering the location of records and witnesses, the cost of transportation, and similar issues, and to prohibit the plaintiff from uncontrolled forum-shopping. Cohen v. Commodity Credit Corporation, 172 F. Supp. 803 (D.Ark.1959). There is nothing to show that the Helena Division would be more convenient for all parties than the Billings Division. Nor is there any evidence of forum-shopping on the part of plaintiffs. There is no need, therefore, for this court, under 28 U.S. C. Section 1403, to transfer the case to the Helena Division.

## CLASS ACTION

Rule 23(a) of the Federal Rules of Civil Procedure provides:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claim or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

■■ Defendants contend that parts (1) and (2) above are not present in this case. As to part (1), they argue that the class is not sufficiently numerous to maintain a class action since the maximum number of defendants is fifty-seven, one county attorney for each county in the state plus the Attorney General. The term "impracticability" in the above rule does not mean "impossibility" but "only the difficulty or inconvenience of joining all members of the class." Advertising Specialty National Association v. Federal Trade Commission, 238 F.2d 108, 119 (1 Cir. 1956); Williams v. Humble Oil & Refining Company, 234 F.Supp. 985 (E.D.La. 1964). To demand the joinder of all county attorneys in the state would be a hardship and an inconvenience to all concerned. It would clearly be impracticable.

■■ As to part (2), defendants point out that in some counties no railroad exists. They argue, therefore, that common questions of law or fact do not exist as to all county attorneys. It is true that some county attorneys, because of the existence of railroads in their counties, may be more concerned with the application of Section 41–1124, R.C. M.1947, than other county attorneys. It cannot be said, however, that the county attorneys in counties which do not have railroads have no interest whatsoever in the constitutionality of the statute. There is the possibility, for example, that railroads may be constructed in the future in the few counties which presently do not have railroads. The predominant question here is the *authority* of all county attorneys to prosecute actions under the statute. In determining the constitutionality of the statute, the court is not presented with the question of how different county attorneys are affected. For purposes of a class action involving the constitutionality of a statute and the power of defendants to prosecute actions under it, the requirements of part (2) of Rule 23(a) are met if the authority to prosecute actions under the statute is common to all defendants. On this basis, as required by Rule 23, the court finds that the questions common to defendants predominate over any questions which are not common, and that a class action is superior in this situation to other methods for a fair and efficient adjudication of the controversy.

## JURISDICTION—THE COMMERCE AND SUPREMACY CLAUSES

 The commerce clause of the United States Constitution [4] specifically granted to Congress the power to regulate commerce among the several states. This means that a state may not enact a law which imposes a direct burden on interstate commerce or discriminates against it. The Minnesota Rate Cases [Simpson v. Shepard], 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511 (1913). An undue or unreasonable burden on interstate commerce is defined as one which materially affects interstate commerce where uniformity of regulation is necessary. Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960).

 When the supremacy clause, quoted previously, is considered in connection with the commerce clause, the so-called "preemption doctrine" comes into play. The preemption doctrine applies in a situation where, like here, Congress and a state have enacted legislation regulating nearly identical subjects. As stated in Northern Pacific Railway Company v. State of Washington, 222 U.S. 370, at 378, 32 S.Ct. 160, at 161, 56 L.Ed. 237 (1912):

> "It is elementary, and such is the doctrine announced by the cases to which the court below referred, that the right of a state to apply its police power for the purpose of regulating interstate commerce, in a case like this, exists only from the silence of Congress on the subject, and ceases when Congress acts on the subject, or manifests its purpose to call into play its exclusive power."

 The preemption doctrine does not apply where the state law, by its own terms, does not conflict with the federal law. Southern Pacific Company v. Arizona, 325 U.S. 761, 766, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945). However, where the state law does conflict with the federal law, or where the intrastate and interstate functions of the subject regulated by the two laws cannot be distinguished, the state law must be declared void. As stated in the famed Shreveport rate case, Houston East & West Texas Railway Company v. United States, 234 U.S. 342, at 351, 34 S.Ct. 833, at 836, 58 L.Ed. 1341 (1914):

> "Wherever the interstate and intrastate transactions of carriers are so related that the government of one involves the control of the other, it is Congress, and not the state, that is entitled to prescribe the final and dominant rule, for otherwise Congress would be denied the exercise of its constitutional authority, and the state, and not the nation, would be supreme within the national field."

 It is clear from even a cursory reading of Sections 41–1123 and 41–1124, R.C.M.1947, and Sections 61 through 64, 45 U.S.C., that the Montana law conflicts directly with the federal law. The conflicts relate mainly to the maximum number of consecutive working hours and the penalties for violation of the acts. The Montana law is all-embracing. By its own terms it does not distinguish between intrastate and interstate commerce; and the regulation of hours of labor on railroads, whether intrastate or interstate, is a subject in which uniformity of regulation is clearly desirable. As pointed out earlier, the Montana law was enacted less than one month before the federal law. Applying the principles discussed above, the conclusion cannot be avoided that the Montana law was preempted by the federal law on March 4, 1907. The remaining issues to be considered relate not to the supremacy of the federal law, but to whether this court has jurisdiction to declare the Montana law unconstitutional, and, if so, whether the court

---

4. Article I, Section 8, Clause 3 of the United States Constitution provides:
 "The Congress shall have Power * * to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

should abstain from exercising that jurisdiction.

## JURISDICTION—THREE JUDGE COURT

Section 2281, 28 U.S.C., provides as follows:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

Defendants argue that this section prohibits a single judge from hearing and determining the issues in this case. Plaintiffs, on the other hand, point out that the United States Supreme Court has held that Section 2281, 28 U. S.C., does not apply to supremacy clause cases involving only federal-state statutory conflicts. Swift & Company v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). Plaintiffs' view states correctly the present state of the law. In *Swift*, after discussing the history of Section 2281, 28 U.S.C., the Supreme Court said at 382 U.S. 120, 86 S. Ct. 263:

"That this procedure must be used in any suit for an injunction against state officials on the ground that a state enactment is unconstitutional has been clear from the start. What yet remains unclear, in spite of decisions by this and other courts, is the scope of the phrase 'upon the ground of the unconstitutionality of such statute' when the complaint alleges not the traditional Due Process Clause, Equal Protection Clause, Commerce Clause, or Contract Clause arguments, but rather that the state statute or regulation in question is pre-empted by or in conflict with some federal statute or regulation thereunder. Any such pre-emption or conflict claim is of course grounded in the Supremacy Clause of the Constitution: if a state measure conflicts with a federal requirement, the state provision must give way. Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23. The basic question involved in these cases, however, is never one of interpretation of the Federal Constitution but inevitably one of comparing two statutes. Whether one district judge or three must carry out this function is the question at hand."

The court held that the function should be carried out by a single judge, reasoning as follows at 382 U.S. 126–127, 86 S.Ct. 266:

"The statute requires a three judge court in order to restrain the enforcement of a state statute 'upon the ground of the unconstitutionality of such statute.' Since all federal actions to enjoin a state enactment rest ultimately on the Supremacy Clause, the words 'upon the ground of the unconstitutionality of such statute' would appear to be superfluous unless they are read to exclude some types of such injunctive suits. For a simple provision prohibiting the restraint of the enforcement of any state statute except by a three judge court would manifestly have sufficed to embrace every such suit whatever its particular constitutional ground. It is thus quite permissible to read the phrase in question as one of limitation, signifying a congressional purpose to confine the three judge court requirement to injunction suits depending directly upon a substantive provision of the Constitution, leaving cases of conflict with a federal statute (or treaty) to follow their normal course in a single judge court. We do not suggest that this reading of § 2281 is compelled. We do say, however, that it is an entirely appropriate reading, and

one that is supported by all the precedents in this Court until *Kesler* and by sound policy considerations." (Footnotes omitted.)

 Section 2281, 28 U.S.C., therefore, does not apply to federal suits, based on the supremacy clauses, to declare a state statute unconstitutional and enjoin its enforcement, where the basic question involved is only one of comparing the state and federal statutes. The present case is clearly within the import of the *Swift* decision. The suit is based on the supremacy clause. No statutory construction is necessary. The conflict between the federal and state statutes is evident when they are merely compared. Jurisdiction to hear and determine the issues of the case, therefore, is vested in this court rather than in a tribunal of three judges.

## JURISDICTION—THE ELEVENTH AMENDMENT

Defendants further contend that the jurisdiction of this court is prohibited by the Eleventh Amendment to the United States Constitution.[5] In support of their position, defendants cite Georgia Railroad & Banking Company v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 96 L. Ed. 335 (1952). The case does not support defendants' position. That was a suit by a corporation seeking to enjoin a State Revenue Commissioner from collecting ad valorem taxes in violation of the prohibition in the United States Constitution against a state passing any law impairing the obligation of contracts. The State of Georgia was not joined. In reversing the District Court, the Supreme Court said at 342 U.S. 304, 72 S.Ct. 324:

"The District Court characterized appellant's action as one to enforce an alleged contract with the State of Georgia, and, as such, a suit against the State. But appellant's complaint

is not framed as a suit for specific performance. It seeks to enjoin appellee from collecting taxes in violation of appellant's rights under the Federal Constitution. This Court has long held that a suit to restrain unconstitutional action threatened by an individual who is a state officer is not a suit against the State. These decisions were re-examined and reaffirmed in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and have been consistently followed to the present day."

In Ex parte Young, 209 U.S. 123, at 155, 28 S.Ct. 441, at 452, 52 L.Ed. 714 (1908), the test for determining whether the Eleventh Amendment applies to a suit was set out as follows:

"[I]ndividuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action."

 The Attorney General and the county attorneys of the State of Montana are certainly "clothed with some duty in regard to the enforcement of the laws of the state." This suit is not against the State of Montana, but is, rather, a suit to enjoin defendants from enforcing an unconstitutional act. On this basis it is the finding of the court that this suit meets the test of Ex parte Young. See City of Altus, Oklahoma v. Carr, 255 F.Supp. 828 (W.D.Tex.1966), affirmed 385 U.S. 35, 87 S.Ct. 240, 17 L.Ed.2d 34 (1966).

Under their contention involving the Eleventh Amendment, defendants do not raise the question of whether they "threaten and are about to commence

---

5. The Eleventh Amendment provides:
 "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

proceedings" under Section 41–1124, R. C.M.1947. Instead, that contention is raised under the application of the abstention doctrine as discussed below:

## DOCTRINE OF ABSTENTION

■ Defendants submit that it is a well settled principle that federal courts will abstain from exercising jurisdiction in cases like the present one until the state statute has first been construed by the courts of the state. The bases for this abstention are "the desirability of avoiding unseemly conflict between two sovereignties, the unnecessary impairment of state functions, and the premature determination of constitutional questions." Martin v. Creasy, 360 U.S. 219, at 224, 79 S.Ct. 1034, at 1037, 3 L. Ed.2d 1186 (1959). The doctrine of abstention, however, is not an absolute rule. As the United States Supreme Court stated in Harrison v. NAACP, 360 U.S. 167, at 176, 79 S.Ct. 1025, at 1030, 3 L.Ed.2d 1152 (1959):

"In the service of this doctrine which this Court has applied in many different contexts, no principle has found more consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments *fairly open to interpretation* until the state courts have been afforded a reasonable opportunity to pass upon them."
(Emphasis supplied.)

In Harman v. Forssenius, 380 U.S. 528, at 534–535, 85 S.Ct. 1177, at 1182, 14 L.Ed.2d 50 (1965), the Supreme Court further clarified the application of the abstention doctrine as follows:

"If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction. Baggett v. Bullitt, 377 U.S. 360, 375–379, 84 S.Ct. 1316, 1324–1326, 12 L. Ed.2d 377."

■ The Montana statutes involved here are clear and unambiguous in all respects. The maximum number of hours and the penalties for violation of those hours cannot be interpreted to avoid conflict with the federal law. Defendants argue, however, that the issue of whether the Montana law affects interstate commerce is open to question. In support of their position they point out that a former Attorney General has determined that Section 41–1123, R.C. M.1947, affects only intrastate carriers. Opinions of the Montana Attorney General, 1908–1910, p. 46 (Galen). The vital question, however, is whether the statutes, on their face, can be fairly determined to have no effect on interstate commerce. The court thinks not. Section 41–1123, R.C.M.1947, applies to railroads "operated in whole or in part" within the State of Montana. The only fair interpretation is that the regulation of hours of labor on trains operated in whole or in part within the state affects interstate commerce. Furthermore, even if the statute were applied only to intrastate carriers, it would still affect interstate commerce since, as previously discussed, it regulates a subject in which uniformity of regulation is necessary. It is the finding of the court, therefore, that the federal constitutional question presented in this suit could not be avoided or materially altered by state interpretation.

Contrary to defendants' contention, it is not necessary by this finding to overrule Thomas v. District Court, 270 F.Supp. 487 (D.Mont.1967). The question present in *Thomas* was whether the federal court should intervene in a pending state court criminal action, prior to its final disposition, to enjoin the use of a statement alleged to have been taken in violation of the accused's constitutional rights. The facts and constitutional provisions involved in there are obviously distinguishable from the present suit. The *Thomas* decision has no application here.

■ Defendants further contend that this court should abstain from exercis-

ing its jurisdiction because the State of Montana has not manifested an intent to enforce Sections 41–1123 and 41–1124, R.C.M.1947. Thus, they argue, the constitutional question presented here is premature. Defendants cite Southern Pacific Company v. Conway, 115 F.2d 746 (9 Cir.1940). In that case the railroad sued the Attorney General of Arizona, in his individual capacity, for a declaratory judgment that the Arizona Train Limit Law was unconstitutional as violative of the commerce and due process clauses of the Federal Constitution. The Attorney General claimed that the statute was applicable to railroads in Arizona and that he had formed no opinion as to the validity of the statute or his duties under it. The court held that the pleadings did not present an "actual controversy" under the Declaratory Judgment Act.

In *Conway*, unlike the present case, there was no federal statute in conflict with the Arizona statute. The supremacy clause, therefore, was not applicable, and the case for the unconstitutionality of the Arizona law was not nearly so strong as the case presented here. The defendants, as evidenced by the affidavit of John L. Adams discussed previously, state that no prosecutions are contemplated under the Montana law. But such inaction does not prove that this suit is premature. In cases where criminal statutes deterred persons from maintaining profitable or advantageous relations with others, the Supreme Court has held that suits to enjoin the enforcement of the statutes are not premature if they are grounded on a realistic fear of prosecution. Truax v. Raich, 239 U. S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). In a case involving the First Amendment the Supreme Court has held that "the abstention doctrine is inappropriate for cases such as the present one where * * * statutes are justifiably attacked on their face" as violative of the Federal Consti-

tution. Dombrowski v. Pfister, 380 U.S. 479, at 489–490, 85 S.Ct. 1116, at 1122, 14 L.Ed.2d 22 (1965). City of Altus, Oklahoma v. Carr, *supra*, was a suit for a declaratory judgment decreeing that a Texas statute relating to the transportation of water outside the boundaries of the state was unconstitutional as being in violation of the commerce clause. The suit also sought a permanent injunction against enforcement of the statute. Defendant, the Texas Attorney General, contended that the federal court must abstain from exercising its jurisdiction because no intent to enforce the statute had been shown. In overruling the defendant's objection and granting the relief sought, the court said at 255 F.Supp. 836–837:

"[W]e believe that it is not necessary that the state officer, upon whom the duty of enforcing the particular statute lies, take some affirmative action to enforce such statute. If the officer can, by declining to act, enforce the statute, there is 'threat' enough to take the suit without the provisions of the 11th Amendment. This is readily seen in the case presently before the Court. True, the Defendant has done no affirmative acts to enforce Section 2 of Article 7477b against Plaintiffs, but then he did not have to do so. The very presence of the statute itself and the possibility of its enforcement would preclude the Plaintiffs from making the further substantial expenditures of tax monies necessary to obtain and transport the water from the Mock's land to the City of Altus. * * * We are of the opinion that the present case comes well within the purpose of Section 2201, and find that the presence of Section 2 of Article 7477b, in question, and the omission to act on the part of the Defendant constitute sufficient 'threat' to take the cause without the contemplation of the 11th Amendment."

An intent to maintain the vitality of the Montana statutes involved here was evidenced when the 1969 Legislature

amended Section 41–1123, R.C.M.1947, after it had remained unchanged for sixty-two years. Assuming that the Legislature did not intend a futile act, the amendment by the Legislature and the enforcement by defendants are closely related for purposes of determining whether a threat of enforcement exists. Moreover, like the situation in *City of Altus,* the existence of the statute, as amended, is sufficient "threat" to preclude plaintiffs from acting in violation of it. For these reasons, it is the finding of the court that a threat of enforcement, sufficient to meet the test of *Ex parte Young,* exists in this case, and that an actual controversy is involved in the case sufficient to support a declaratory judgment under Section 2201, 28 U.S.C.

## CONCLUSION

Section 1337, 28 U.S.C., vests jurisdiction in this court to hear and determine the issues presented by this suit. Plaintiffs correctly plead this jurisdiction in the complaint. Section 1337, 28 U.S.C., provides:

> "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is proper in this case. A comparison of the Montana and federal statutes involved presents no genuine issue of fact upon which trial would be necessary. All other issues involved here present only questions of law.

Based upon the foregoing, it is the finding of the court that Sections 41–1123 and 41–1124, R.C.M.1947, are in direct conflict with Sections 61 through 64, 45 U.S.C. Under the supremacy clause of the United States Constitution and Section 2201, 28 U.S.C. Sections 41–1123 and 41–1124, R.C.M.1947, are hereby declared void.

It is therefore ordered:

1. That defendants' consolidated motions are denied.

2. That plaintiffs' motion for summary judgment is granted; and

3. That each defendant and his agents or employees are hereby permanently enjoined from commencing and prosecuting any actions under Sections 41–1123 and 41–1124, R.C.M.1947.