**Cynthia Jo SAMUEL and Dena Meyers, individually, and on behalf of all others similarly situated, Plaintiffs,**

v.

**UNIVERSITY OF PITTSBURGH et al., Defendants.**

**Civ. A. No. 71–1202.**

United States District Court,
W. D. Pennsylvania.

Aug. 21, 1972.

Michael P. Malakoff, Daniel M. Berger, Berger & Kapetan, Harry F. Swanger, Richard R. Isaacson, Pittsburgh, Pa., for plaintiffs.

Charles C. Arensberg, Tucker, Arensberg & Ferguson, J. Shane Creamer, Atty. Gen., Barry A. Roth, Deputy Atty. Gen., Thomas F. Halloran, Asst. Atty. Gen., Pittsburgh, Pa., Charles A. Glackin, Sp. Counsel, William H. Smith, Chief Counsel, Harrisburg, Pa., Richard Freemann, Jr., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., Delbert McQuaide, McQuaide, Blasko, Brown & Geiser, State College, Pa., for defendants.

## OPINION

TEITELBAUM, District Judge.

This is an action under 28 U.S.C. § 1343(3) and (4) and 42 U.S.C. § 1983. The named plaintiffs are two married, female, graduate students at the University of Pittsburgh. Procedurally they purport to represent, pursuant to Rule 23 of the Federal Rules of Civil Procedure, all other persons similarly situated. Substantively they seek (1) to have declared unconstitutional and enjoined Rule B(2) [1] of the "Rules Governing The Determination Of . . . Student Pennsylvania Resident Status", a rule promulgated by the Auditor General of Pennsylvania, and (2) to have all the excess tuition exacted by the defendants under the rule since 1967 refunded.[2]

---

1. "The domicile of a wife (adult or minor) is that of her husband. Where, however, an unmarried woman enrolled as a student having a Pennsylvania resident status marries a non-Pennsylvania resident, she shall continue to be classified as a Pennsylvania resident within the meaning of these Rules."

2. In addition, the plaintiffs originally caused to be convened a three-judge statutory court to declare unconstitutional and enjoin the enforcement of the rule. Subsequently, however, the Attorney General of Pennsylvania revoked the rule and the three-judge court which was convened was dissolved. (The defendants' contention that the revocation makes the whole action moot will be considered *infra*.)

The plaintiffs contend that under the rule they are classified as out-of-state residents solely and simply because their husbands are classified as out-of-state residents. They contend that in their own rights they are properly classifiable, for tuition paying purposes at least, as in-state residents.[3] The conclusion of the plaintiffs is that they have been unconstitutionally discriminated against on the basis of their female sex.

The named defendants are groupable into four categories: (1) three general officials of the Commonwealth of Pennsylvania, (2) the three state-related universities of Pennsylvania, (3) ten general officials of the three state-related universities and (4) Indiana University of Pennsylvania and two of its general officials. In addition, the plaintiffs seek to include as defendants, pursuant to Rule 23, "all other state and state-related universities and colleges in the Commonwealth of Pennsylvania similarly situated" and their corresponding general officials.

Pending at this juncture are (1) the defendants' motions to dismiss and (2) the plaintiffs' (a) motion to maintain the action as a class action pursuant to Rule 23 as to both plaintiffs and defendants and (b) application for a preliminary injunction. Since "whether there is a proper class does not depend on the existence of a cause of action", Kahan v. Rosenstiel, 424 F.2d 161 (3rd Cir. 1970), and since the chief contention of the defendants' motions to dismiss is that the plaintiffs have failed to state a claim upon which relief may be granted, it would seem that the plaintiffs' motion to maintain the action as a class action should be considered initially.

## CLASS ACTION MOTIONS
### Defendant Class

The primary substantive issue in this action is whether or not Rule B(2) and "all other similar rules" are unconstitutional under the Fourteenth Amendment of the United States Constitution. Since Rule B(2) is applied *per se* only by the University of Pittsburgh, the Pennsylvania State University and Temple University, all the defendants as to the issue of its constitutionality have been named. It is as to the "other similar rules" which are allegedly applied by Indiana University of Pennsylvania and the "all other state . . . universities and colleges in the Commonwealth of Pennsylvania similarly situated", then, that the plaintiffs seek to maintain a defendant class action. The plaintiffs contention is that all

". . . the [defendants have] acted . . . on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole". (Rule 23(b)(2))

There are twenty-one named defendants. The plaintiffs define the class which the named defendants proposedly represent to be the thirteen "other state and state-related universities and colleges in the Commonwealth of Pennsyl-

---

3. Rule B(3) states: "The establishment of domicile is primarily a matter of continued residence and intention. Generally, Pennsylvania domicile is considered to be established upon the completion of at least twelve months of continuous residence within the State at the time of registration for courses, provided that:
   a. Such twelve months are not for the purpose of attendance as an undergraduate or graduate student at any institution of learning in Pennsylvania. Establishment of Pennsylvania domicile with less than twelve months residence must be supported by proof of positive and unequivocal action such as purchase of a Pennsylvania home.
   b. There is no intent on the part of the person involved to return to another state or country.
   c. The person involved is a citizen of the United States or had indicated by formal action his intent to become a citizen or has been admitted on an immigration visa."

vania similarly situated" and their corresponding chancellors and presidents, boards of trustees and chairmen of boards of trustees, registrars and assistant registrars. The plaintiffs conclude that the entire class consists of seventy-one members. The plaintiffs assert that Indiana University of Pennsylvania and the unnamed defendants do not apply Rule B(2) *per se*, but apply the "similar" "common law rule". Thus Indiana University and its general officials are the named defendant representatives of the proposed class, and it is that class which must be measured against Rule 23.

■ The first prerequisite to the maintenance of a class action is that prescribed by Rule 23(a)(1) that "the class is so numerous that joinder of all members is impracticable". The number of members of the class alone is not dispositive. A class consisting of as few members as eighteen was allowed to be maintained in Cypress v. Newport News General & Nonsectarian Hospital Association, 375 F.2d 648 (4th Cir. 1967). It is more the practicalities of the circumstance which govern. Arkansas Education Association v. Board of Education of Portland, Arkansas School District, 446 F.2d 763 (8th Cir. 1971); Cypress v. Newport News General & Nonsectarian Hospital Association, *supra*. Further, "impracticability" does not mean "impossibility". Union Pacific Railroad Company v. Woodahl, 308 F. Supp. 1002 (D.C.D.Mont.1970). In *Woodahl* a class of fifty-seven was permitted for the reason that,

> "[T]o demand the joinder of all county attorneys in the state [57] would be a hardship and an inconvenience to all concerned."

In this action, while the forty-eight proposed defendants are not particularly widely scattered and are readily identifiable, I think the inconvenience involved in joining them serves to satisfy the numerosity requirement.

Clearly there are questions of law or fact common to the class. And equally as clearly the defenses available to Indiana University and its officials are typical of and coextensive with those available for advancement by the members of the proposed class. To be sure, the defenses as between the colleges and universities and their officials may vary, but since the colleges and universities, and their officials are represented, the whole gamut of the available defenses are represented.

■■ Too, the requirement of Rule 23(a)(4) that "the representative parties will fairly and adequately protect the interest of the class" is satisfied. This prerequisite demands that the representing attorney be qualified, experienced and able, and that the action will be vigorously and uncompromisingly prosecuted. Katz v. Carte Blanche Corporation, 52 F.R.D. 510 (D.C.W.D.Pa. 1971). The attorneys representing Indiana University and its officials are undoubtedly in satisfaction of the adequate representation requirement. I conclude, therefore, that as to the defendants this action is maintainable as a class action, the class being basically all the state universities and colleges of Pennsylvania.

Plaintiff Class

The plaintiff class purports to be "all resident married women students residing in the Commonwealth of Pennsylvania who attend and/or have attended since 1967 the University of Pittsburgh, the Pennsylvania State University, Indiana University of Pennsylvania, Temple University and all other state and state-related universities and colleges in the Commonwealth of Pennsylvania similarly situated, and who are and have been discriminated against because of their sex because they are presumed to have the residences of their husbands". As to the substantive issue in this action, the constitutionality of Rule B(2), the maintenance of a plaintiff class is obviously proper under Rule 23(b)(2).

As to the substantive issue of whether or not the plaintiffs as a class, limited to resident married women students of the University of Pittsburgh, the Pennsylvania State University, and Temple University, are entitled to refunds of all the excess tuition exacted from them under Rule B(2), the maintenance of a class is also proper since it is to be maintained incident to the primary issue of constitutionality. See Rodriguez v. Swank, 318 F.Supp. 289 (D.C.N.D.Ill.1970), aff'd, 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971); Robinson v. Lorillard Corporation, 444 F.2d 791 (4th Cir. 1971). Without intimating whether or not Rule B(2) is constitutional, if restitution were not available to the class the defendant would be unjustly enriched if the rule is unconstitutional. The individual issue of whether or not a married woman student was or is an in-state resident is simply that of membership in the class which is inevitably an individual issue in class actions.[4] Membership in the class in this action will presumably be reasonably uncomplicated since the residency of its students, other than its married female students, is a determination with which the defendants, particularly the registrars and assistant registrars, are familiar and proficient. The precise process for determining residency, however, will be left for a later stage of this action.[5]

As to the "similar" "common law rule", however, the named plaintiffs appear to lack legal standing. Neither of them is or has been a student at either Indiana University or any of the thirteen state universities and colleges of Pennsylvania. They are not and have not been affected in any way by the application of the "similar" "common law rule".

The test, borrowing from Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) is whether or not the plaintiffs have "a personal stake in the outcome of the controversy". Obviously the plaintiffs in this action have none with respect to the "similar" "common law rule". Cf. Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) and Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Therefore they may not maintain this action against its application by either the class represented by Indiana University or Indiana University.

## MOTIONS TO DISMISS

The defendants' motions to dismiss are based, under the umbrella of failure to state a claim upon which relief may be granted, on four grounds:[6] (1) the constitutionality of Rule B(2) is moot, (2) an action for damages may not be maintained under § 1983 against a state or its officials, (3) damages may

---

4. See Katz v. Carte Blanche Corporation, 53 F.R.D. 539 (D.C.W.D.Pa.1971).

5. Also left for later determination will be the issue of the reach of the class. The plaintiffs contend the class extends to those who are or have been students since 1967. There has been no attention addressed to this issue to date and consequently the significance of the year 1967 has not been developed. (The rule became effective in 1966). Therefore as contemplated by Rule 23(d), the order allowing this action to proceed as a class action will be amended later to precisely define the class as to the issue of its reach in terms of time.

6. Temple University (and actually the other defendants by each's blanket incorporation of each other's briefs) also raises as a bar the plaintiffs' failures to exhaust administrative remedies. The failure to exhaust administrative remedies, however, is not a bar to action under § 1983. Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968) and Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967). Even if the failure generally were a bar, it would not be in this instance under the principles laid down in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

not be awarded under § 1983 against officials acting in good faith and (4) the defendants are immune from this action.

■ The defendants contend the action is moot because since its filing the Attorney General of Pennsylvania has revoked and withdrawn the rule. The plaintiffs allege, however, that there are attendant unspecified rules and policies by which the discriminatory classification is perpetuatable, and that in fact the practice continues, a fact which the Assistant Registrar of the University of Pittsburgh has admitted in a deposition. Therefore, the formal repudiation of the rule when the allegation is, and indeed the indications are, that its underlying policy persists will not make this action moot.

■ The second and third contentions of the defendants are related. They do not argue that injunctive relief may not be had against them, for the availability of that relief is settled. See, e. g., Griffin v. County School Board of Prince Edward County, 377 U. S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); Harkless v. Sweeny Independent School District, 427 F.2d 319 (5th Cir. 1970), cert. den'd, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); Lee v. Board of Regents of State Colleges, 441 F.2d 1257 (7th Cir. 1971). They argue rather that the request for restitutionary relief is basically a legal claim for damages and that damages may be had neither against the institutions because they are not "persons" nor against the individuals because they acted in good faith.

■ With respect to the institutions, I think restitution is a remedy

available to the plaintiffs. They seek simply a refund of the excess tuition paid by them pursuant to the rule. The courts have held uniformly that monies which plaintiffs in § 1983 actions have been unconstitutionally deprived of are awardable incident to equitable relief. Harkless v. Sweeny Independent School District, *supra*; McFerren v. County Board of Education of Fayette County, Tennessee, 455 F.2d 199 (6th Cir. 1972); Horton v. Lawrence County Board of Education, 449 F.2d 793 (5th Cir. 1971).[7] These cases all involved claims for back pay relating to jobs which were discriminatorily and unconstitutionally *denied* the respective claimants. It would seem then, *a fortiori*, that monies *exacted* unconstitutionally are, incident to equitable relief, to be refunded. This was the recent holding of Kline v. Vlandis, 346 F.Supp. 526 (D.C. D.Conn.1972). In *Kline*, a state statute relating to the residency of students was declared unconstitutional, and it was concluded that the plaintiff was

". . . entitled to a refund of the amounts of tuition and fees paid by her . . . in excess of the amounts paid by resident students as tuition and fees . . ."

Therefore, I conclude that the plaintiffs are entitled to seek restitution of the excess tuition from the institutional defendants. With respect to the individual defendants' arguments that they may not be held liable for damages since they acted in good faith, generally an individual acting as a state official[8] is entitled to the defense of good faith. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.

---

(The Pennsylvania State University also raises the defense of laches. I think it clear, however, that there has been no showing of either an inexcusable delay by the plaintiffs or prejudice to the defendants. If both are established later in the proceeding the defense may then be raised.)

7. In *Harkless*, it was stated that, " . . . the relief sought is equitable only—reinstatement and back pay."

8. All the defendants have stipulated that in enforcing Rule B(2) "state action" was involved.

Ed.2d 288 (1967). This action, however, seeks restitution rather than damages, and since presumably none of the monies paid pursuant to the rule were retained by the individual defendants, it is unlikely that, if restitution is awarded the plaintiffs, it will have to be made by the individual defendants. But at this stage of this action, absent a record as to the factual matters of good faith as well as retention of the monies, I think dismissal is inappropriate. I think this too because the individual defendants are legitimate defendants with respect to the requested injunctive relief and consequently could not be completely dismissed in any event.

Lastly, the defendants assert immunity—"sovereign", "governmental" and "derivative"—and the Eleventh Amendment to the United States Constitution as bars to this action. As this action is one of constitutional proportions and is one solely for injunctive and restitutionary relief, however, none of these defenses is available to the defendants. See Griffin v. County School Board of Prince Edward County, *supra,* and e. g., Gaddis v. Wyman, 304 F.Supp. 717 (D.C.S.C.N.Y.1969), aff'd, Wyman v. Bowens, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1971).

Accordingly, an order will be entered (1) allowing the maintenance of a class action of the similarly situated plaintiffs *vis-a-vis* the named defendant state-related universities *viz.* the University of Pittsburgh, the Pennsylvania State University and Temple University, and their named general officials, and denying the maintenance of a class action *vis-a-vis* Indiana University of Pennsylvania and its named general officials and the similarly situated unnamed defendants, and (2) denying the defendants' motions to dismiss. Further, the order will set a time and a date for a hearing on the plaintiffs' application for a preliminary injunction.