TEXAS EDUCATION AGENCY; Commissioner of Education, W.N. Kirby; Assistant General Counsel of the Texas Education Agency, F. Patrick Whelan; Jim Mattox, Attorney General of Texas; Arlington Independent School District,

its school attendance officer, Max Kidd; Katy Independent School District, its school attendance officer, Helena Blackstock; and El Paso Independent School District, its school attendance officer, Charles F. Hart, Individually and in Behalf of the Class of Public School Districts and Their School Attendance Officers in the State of Texas, Appellants,

v.

Gary W. LEEPER and wife, Cheryl Leeper, Bruce Smythe and wife, Patricia Smythe, Calvin E. Minkler and wife, Wanda Minkler, Quinten T. Parten, Jr. and wife, Sandra Parten, Tony Martinez and wife, Suzanne Martinez, Charles Kent and wife, Corlee Kent, John W. Jackson, Jr. and wife, Helen Jackson, Michael R. Galbraith and wife, Sally K. Galbraith, and Richard Wells and wife, Kay Wells, Individually and Representative of all Persons who are Teaching their Children at Home in the State of Texas; Calvert School, Incorporated, First Baptist Academy of Dallas, Reform Publications, Inc., d/b/a Basic Education, American Christian Schools, Incorporated, and Christian Liberty Academy Satellite Schools, Individually and Representative of all other Entities Who are Providing Home School Curricula and Instruction to Families Residing in the State of Texas, Appellees.

No. 2–87–216–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 27, 1991.

Rehearing Denied Dec. 31, 1991.

---

Jim Mattox, Atty. Gen., Mary F. Keller, First Asst., Lou McCreary, Executive Asst., James C. Todd, Chief, General Litigation, and Kevin T. O'Hanlon, Asst., Austin, for appellant Texas Educ. Agency, et al.

Ball, Landrith, Kulesz & Hubble, Chester G. Ball, Arlington, for appellant Arlington I.S.D.

Bracewell & Patterson, Janet L. Horton, Houston, for appellant Katy I.S.D.

Grambling & Mounce, S. Anthony Safi and Steven L. Hughes, El Paso, for appellant El Paso I.S.D.

Law Offices of J. Shelby Sharpe, J. Shelby Sharpe, Fort Worth, The Rutherford Institute, John W. Whitehead, Manassas, Va., Locke, Purnell, Rain, Harrell, Morris Harrell, Dallas, for appellees.

Before FARRIS, LATTIMORE and MEYERS, JJ.

## OPINION

LATTIMORE, Justice.

This is an appeal of the judgment in a class action suit brought by home school parents and home school providers under 42 U.S.C.S. § 1983 (1986) (Civil action of deprivation of rights) and TEX.CIV.PRAC. & REM.CODE ANN. § 37.001 et seq. (Vernon 1986) (Declaratory Judgments Act) against the Texas Education Agency, its Assistant General Counsel, Texas Attorney General Jim Mattox, and three independent school districts and their attendance officers, by which plaintiffs were awarded a declarato-

ry judgment, a permanent injunction and attorneys' fees against certain named defendants and members of the defendant class of public school districts and their school attendance officers. The declaratory judgment, which will be later described in detail, can be summarized as declaring children attending schools conducted in the children's homes and considered to be meeting certain criteria, are in attendance upon a private or parochial school and are exempt from the requirements of compulsory attendance at a public school. All Texas school districts and their school attendance officers were permanently enjoined from initiating charges for thwarting the compulsory attendance law against parents of school-age children who are being taught in a bona fide manner in or through their home, or need for supervision by reason of unexcused absence from school, if the initiation of such charges is based upon two specific written interpretations, by the Texas Education Agency and the State Board of Education, of the exemption provisions of the compulsory attendance statute, section 21.033(a)(1) of the Texas Education Code, or any other attempt by the State Board of Education to define or regulate private or parochial schools. Attorneys' fees and expenses in excess of $360,000 were allowed to plaintiffs against the school district defendants.

The issues raised on appeal are: whether the civil court had jurisdiction to construe and enjoin enforcement of a penal statute or to determine the validity or applicability of the State Board of Education guidelines to that penal statute; whether plaintiffs' equal protection and due process rights were violated; whether the awards to plaintiffs were barred by the doctrines of sovereign and governmental immunities; and whether there was factual and legal sufficiency of evidence to support class-wide injunctive relief, the declaratory judgment, or attorneys' fees.

We affirm.

At the heart of this case are the following provisions of the Texas Education Code as they existed in 1987:

Sec. 21.032. Compulsory Attendance

(a) Unless specifically exempted by Section 21.033 of this code or under other laws, every child in the state who is as much as seven years of age, or who is less than seven years of age and has previously been enrolled in first grade, and who has not completed the academic year in which his 16th birthday occurred shall be required to attend the public schools in the district of his residence or in some other district to which he may be transferred as provided or authorized by law a minimum of 170 days of the regular school term of the district in which the child resides or to which he has been transferred.

Sec. 21.033. Exemptions

(a) The following classes of children are exempt from the requirements of compulsory attendance:

(1) any child in attendance upon a private or parochial school which shall include in its course a study of good citizenship....

Sec. 4.25. Thwarting Compulsory Attendance Law

(a) If any parent or person standing in parental relation to a child, within the compulsory school attendance ages and not lawfully exempt or properly excused from school attendance, fails to require such child to attend school for such periods as required by law, it shall be the duty of the proper attendance officer to warn, in writing, the parent or person standing in parental relation that attendance must be immediately required. If after this warning the parent or person standing in parental relation intentionally, knowingly, recklessly, or with criminal negligence fails to require the child to attend school as required by law, the parent or person standing in parental relation commits an offense. The attendance officer shall file a complaint against him in the county court, in the justice court of his resident precinct, or in the municipal court of the municipality in which he resides. An offense under this section is punishable by a fine of not less than $5 nor more than $25 for the first

offense, not less than $10 nor more than $50 for the second offense, and not less than $25 nor more than $100 for a subsequent offense. Each day the child remains out of school after the warning has been given or the child ordered to school by the juvenile court may constitute a separate offense.

Sec. 21.034. Reports

(a) The failure of any child within the compulsory attendance age to enroll in school shall be determined upon the basis of the reports prescribed by this section.

(b) The county superintendent of each county shall furnish to the superintendent of schools of each school district in the county, or to the principal in the event there be no superintendent, a complete list of all children belonging in the district as shown by the last scholastic census and the record to transfers to and from the district.

(c) Each superintendent or principal shall report to the county superintendent the names of all children subject to the provisions of this subchapter who have not enrolled in the school.

(d) The superintendent, principal, or other official of any private, denominational, or parochial school shall furnish the county superintendent a list of all children of scholastic age enrolled in the school and the district in which each child was enumerated in the public school census.

(e) From the lists supplied by the public school superintendents and principals and by the officials of any private, denominational, or parochial schools, the county superintendent shall compile a list for each district showing all children who are shown by the census to be of scholastic age but who have not enrolled in any school. The list for each district shall be furnished to the person or persons serving as attendance officer for the district.

Sec. 21.039. Powers and Duties of Attendance Officers

(a) A school attendance officer shall have the following powers and duties:

. . . .

(3) to enforce the provisions of the compulsory attendance law;

. . . .

(6) to proceed in juvenile court against any incorrigible pupil, or against any recalcitrant person having parental control as provided in Section 4.25 of this code.

TEX.EDUC.CODE ANN. §§ 21.032(a), 21.-033(a)(1), 21.034, 21.039(a)(3) & (6) (Vernon 1987) & § 4.25(a) (Vernon Supp.1987) (footnote omitted).

The plaintiffs-appellees consist of four classes, defined as: (1) persons who have enrolled their school-aged children in private or parochial schools outside their homes, receiving the curricula and instruction of such schools in their homes; (2) persons who have established a private school in their homes; (3) entities which have established private or parochial schools where the students receive their curricula and instruction in their homes; and (4) entities which provide curricula and instruction for private schools in homes. Members of the first two classes will be referred to as "home school parents" or "parents" and the others will be called "home school providers" or "providers."

Appellees Gary W. Leeper and wife, Cheryl Leeper, of Arlington and Richard Wells and wife, Kay Wells, of El Paso are named plaintiffs and representatives of category (1) home school parents. Bruce Smythe and wife, Patricia Smythe, residing in Flint, Smith County; Calvin E. Minkler and wife, Wanda Minkler, of Arlington; Quinten T. Parten, Jr. and wife, Sandra Parten, of Arlington; Tony Martinez and wife, Suzanne Martinez, of Watauga; Charles Kent and wife, Corlee Kent, of Arlington; John W. Jackson, Jr. and wife, Helen Jackson, of Duncanville; and Michael R. Galbraith and wife, Sally K. Galbraith, of Houston are representatives of category (2) home school parents. An additional named plaintiff is Home School Legal Defense Association of Washington, D.C., a nonprofit corporation whose membership includes at lease 385 families in Texas whose children are enrolled in private schools receiving their curricula and instruction in their homes, some

of whom reside in the Arlington Independent School District and in the Katy Independent School District.

Named plaintiffs and representatives of category (3) home school providers are: Calvert School, Incorporated of Baltimore, Maryland; First Baptist Academy of Dallas; Christian Liberty Academy Satellite Schools of Prospect Heights, Illinois; and American Christian Schools, Incorporated, of Colleyville, Tarrant County. Representative of category (4) home school providers is named plaintiff Reform Publications, Inc. d/b/a Basic Education, of Lewisville, Denton County. All curricula used by the home school parents and providers include a study of good citizenship as required by section 21.033(a)(1).[1]

Named defendants, representative of the class of school districts and school attendance officers, are: Arlington Independent School District and Max Kidd; Katy Independent School District and Helena Blackstock; and El Paso Independent School District and Charles F. Hart.

We briefly summarize that portion of the record germane to our threshold inquiry into the jurisdictional issue. At the turn of the century, only ten percent of the school-age children in Texas attended public schools with almost the entire balance being taught at home because there were few private academies and parochial schools in the state. In 1915, the first compulsory attendance law was passed.[2] Exempted was "[a]ny child in attendance upon a private or parochial school or who is being properly instructed by a private tutor." In 1923 the exemption was changed to add the language that now appears in section 21.-033 requiring instruction in good citizenship and to delete the private tutor provisions.[3]

The earliest expression regarding home education found in the records of the Texas Education Agency appears in a 1981 publication entitled *House Bill 72 and Subsequent Educational Legislation: Comprehensive References and Explanations*, which states that "educating a child at home is not the same as private school instruction and, therefore, not an acceptable substitute" and that "[c]orrespondence courses are not a legal substitute for attendance at a public or private school."

Approximately 150 prosecutions of parents under section 4.25 had been initiated at time of trial. Eighty cases had actually gone to trial. No case has been decided at the appellate level. In each prosecution, the position of the school district was that the home could not qualify as a private school no matter what education was taking place there. It was estimated that there were at time of trial from 10,000 to 15,000 Texas families teaching their children at home.

When this suit was filed in March 1985, all appellants took the position in their original answers that a school-age child could not be taught at home and be considered to be enrolled in a private school. However, on April 12, 1986, the State Board of Education formally requested the legislature at its 1987 regular session either to define the terms "private or parochial school" or to specifically authorize the Board to do so, and in the same document set forth its recommended guidelines to the school districts for utilization pending action by the legislature. The text of this resolution was part of the record below and in fact was quoted by the trial court in its judgment. No legislation resulted from the State School Board's request.[4] In the recom-

---

1. All code references are to the Texas Education Code unless otherwise noted.

2. Act approved March 13, 1915, 34th Leg., R.S., ch. 49, § 2, 1915 Tex.Gen.Laws 92, 93.

3. Act approved March 23, 1923, 38th Leg., R.S., ch. 121, § 2, 1923 Tex.Gen.Laws 255, 255.

4. *See however,* Act approved June 14, 1989, 71st Leg., R.S., ch. 658, § 11, 1989 Tex.Gen.Laws 2165, 2168, amending § 4.25, Education Code (Thwarting Compulsory Attendance Law) and other sections of the code for the following:

 SECTION 11. Nothing in this Act applies to students in attendance upon a private or parochial school, *which includes home schools, in accordance with Section 21.033, Education Code.*

 *Id.* (emphasis added). We find no place where the above provision is published as part of a Code or Statute.

mended guidelines, the terms were defined by the Board as:

(1) An entity that is accredited by an accrediting organization recognized by the Commissioner of Education, or

(2) An entity that meets the following criteria:

a. It instructs students in facilities that comply with applicable local fire and sanitation codes;

b. It has a written regular plan of instruction sufficient to meet basic student educational goals;

c. Its students shall annually be administered a recognized nationally norm-referenced standard achievement test. Evidence of such administration and the results thereof shall be furnished upon request to the attendance officer for the public school district in which the private or parochial school is located. The local school district may require that the next administration of such achievement test be by a qualified test administrator, or

(3) An entity that furnishes evidence satisfactory to the attendance officer of the school district in which the private or parochial school is located, that it meets the criteria required by the Commissioner of Education for an entity to be accredited by a recognized accrediting organization under (1) of this section.

Shortly after the guidelines were published, the Attorney General and Katy I.S.D. filed in this suit a motion to dismiss for mootness, averring most, if not all of the plaintiff class representatives met the minimum standards of the guidelines, and since the school districts would follow the guidelines it became speculative only that plaintiffs would be prosecuted. The motions to dismiss were overruled.

Subsequently, an "Agreed Interlocutory Judgment" was issued by which the court would declare that:

[A] school-aged child residing in the State of Texas who is regularly and diligently pursuing in the child's home a written curriculum following a regular plan of instruction designed to meet basic educational goals of reading, language arts, mathematics and a study of good citizenship, of either a private or parochial school in which the child is enrolled which exists apart from the child's home or that has been obtained from other sources is considered to be in attendance upon a private or parochial school within the meaning of the language of Section 21.033(a)(1) of the Texas Education Code.

Before a hearing could be had on that agreed motion for interlocutory declaratory judgment, it was determined that some of its language was subject to misinterpretation. A redraft of the judgment that would eliminate any misconstruction of the agreed interpretation failed to secure approval of the Board of Education, and the agreement disintegrated.

In its final judgment, the trial court found: that any prosecution initiated upon the interpretation of section 21.033(a)(1) by T.E.A. during the years 1981–1986 or pursuant to the State Board's guidelines of April 12, 1986, violates constitutional due process and equal protection rights; that the use of a home to teach school-age children is a private, noncommercial use of the home; that plaintiffs and the represented classes have no adequate remedy at law and will suffer irreparable injury; that the named plaintiffs and the classes they represent are entitled to a declaratory judgment interpreting the meaning of the language of section 21.033(a)(1) because of the differences in the interpretation of the statute and then declared:

[T]hat a school-age child residing in the State of Texas who is pursuing under the direction of a parent or parents or one standing in parental authority in or through the child's home in a bona fide (good faith, not a sham or subterfuge) manner a curriculum consisting of books, workbooks, other written materials, including that which appears on an electronic screen of either a computer or video tape monitor, or any combination of the preceding from either (1) of a private or parochial school which exists apart from the child's home or (2) which

has been developed or obtained from any source, said curriculum designed to meet basic education goals of reading, spelling, grammar, mathematics and a study of good citizenship, is in attendance upon a private or parochial school within the meaning of Section 21.033(a)(1) of the Texas Education Code and exempt from the requirements of compulsory attendance at a public school.

It was further declared that the children of all of the named plaintiff home school parents, and any children pursuing the curricula of any of the named plaintiff home school providers, were in compliance with section 21.033(a)(1).

The judgment then permanently enjoined all school districts and attendance officers from initiating prosecutions under section 4.25 or section 51.03 of the Family Code based upon: (1) the Texas Education Agency 1981–1986 interpretation of section 21.-033(a)(1); (2) the April 12, 1986, guidelines of the State Board of Education; or (3) any other attempt by the Board to define or regulate private or parochial schools.

■ Appellants' initial attack upon the judgment is the claim of error in granting civil declaratory and injunctive relief against a criminal statute. It is well established that the constitutionality or validity of a penal ordinance is a question ordinarily within the exclusive jurisdiction of courts exercising criminal jurisdiction, subject to the exception that courts of equity may enjoin the enforcement of a penal ordinance where the ordinance is unconstitutional and void, and its enforcement will result in irreparable injury to vested property rights. *City of Fort Worth v. Craik*, 411 S.W.2d 541, 542 (Tex.1967). *See also Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 894 (Tex.1970).

It has been argued that the Declaratory Judgment Act, formerly Tex.Rev.Civ.Stat. Ann. art. 2524–1 (Vernon 1965) now codified at Tex.Civ.Prac. & Rem.Code Ann. §§ 37.001 and following (Vernon 1986), granted an additional remedy to persons in a position similar to that of plaintiffs herein, so that the requirements for equitable relief are no longer applicable. Such contentions have been uniformly overruled. *See Chevron Oil Co. v. City of El Paso*, 537 S.W.2d 472, 475 (Tex.Civ.App.—El Paso 1976, no writ); *City of Amarillo v. Griggs Southwest Mortuary*, 406 S.W.2d 230, 233 (Tex.Civ.App.—Amarillo 1966, writ ref'd n.r.e.); *Malone v. City of Houston*, 278 S.W.2d 204, 205 (Tex.Civ.App.—Galveston 1955, writ ref'd n.r.e.).

Appellees did not plead or prove that the penal statute in question is unconstitutional or otherwise void, nor have they shown that enforcement of the statute has, or will result in irreparable injury to their vested property rights. Thus, under Texas law, the trial court lacked jurisdiction to grant equitable relief or enter a declaratory judgment construing or interpreting the code provisions here in question. *City of Fort Worth*, 411 S.W.2d at 542.

We now examine appellees' contention that 42 U.S.C.S. § 1983 provides a basis for the declaratory and injunctive relief afforded them. That portion of the United States Code, known as the Civil Rights Act of 1871, provides in part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*

It appears that a suit for damages, declaratory relief and injunction is encompassed within the terms of section 1983, and it has been held that state courts have concurrent jurisdiction over cases brought under its provisions. *See Martinez v. California*, 444 U.S. 277, 283, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 488 (1980).

■ Appellant school districts argue, however, that the award of injunctive relief and attorneys' fees and expenses against them is barred by the doctrines of sover-

eign and governmental immunity. They point out that an independent school district has been declared to be an agency of the state, and as such, it is immune from liability in a suit sounding in tort, except for the limited waiver of immunity granted by the legislature as to causes of action arising from the use of motor-driven vehicles or motor-driven equipment. *See Barr v. Bernhard,* 562 S.W.2d 844, 846 (Tex. 1978) and Texas Tort Claims Act, TEX.CIV. PRAC. & REM.CODE ANN. § 101.021, 101.025, & 101.051 (Vernon 1986). Furthermore, it has been directly held that the state or its agency is immune from suit when the cause of action is based upon the Civil Rights Act of 1871. *Bagg v. Univ. of Texas Medical Branch,* 726 S.W.2d 582, 585–86 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

■ In spite of the characterization of a school district as an agency of the state by our supreme court in *Barr,* 562 S.W.2d 844, such status is not recognized by the federal courts. In *Lopez v. Houston Indep. School Dist.,* 817 F.2d 351, 353 (5th Cir. 1987), the school district was declared to be a local governmental body, sufficiently distinct from the state to be outside the eleventh amendment and amenable to suit under the Civil Rights Act of 1871. Prior to the decision in *Lopez,* the U.S. Supreme Court had decided that local governing bodies and local officials sued in their official capacities may be sued directly in a federal court under section 1983 for monetary, declaratory, and injunctive relief where the action that is alleged to be unconstitutional implements a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611, 635 (1978). Moreover, constitutional deprivations visited pursuant to governmental "custom" without formal approval are likewise actionable. *Id.* State courts which make themselves available for the enforcement of federal remedies must afford to the litigants the full benefit of federal law. *See Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 243, 63 S.Ct. 246, 250, 87 L.Ed. 239, 243 (1942). In light of the above authorities we are required to recognize the jurisdiction of a state court to entertain a direct suit against a school district and its school attendance officer under section 1983 and to provide legal, equitable or declaratory relief thereunder. Appellant school districts' and attendance officers' point of error six is overruled.

■ The state agencies involved in this case have not raised the issue of immunity as to them or their officials in a section 1983 action. However, the Texas Education Agency challenges the jurisdiction of the court to determine the validity or applicability of the Board of Education's guidelines, claiming exclusive venue for such action rests with the Travis County district courts by virtue of the Administrative Procedure and Texas Register Act, TEX.REV. CIV.STAT.ANN. art. 6252–13a (Vernon Supp. 1989). Claim is made that the guidelines issued by the board were adopted pursuant to the procedure for adoption of rules set out in section 5 of the Act, and that the following language of section 12 of the Act applies:

> Sec. 12. The validity or applicability of any rule, including an emergency rule adopted under Section 5(d) of this Act, may be determined in an action for declaratory judgment in a district court of Travis County, and not elsewhere, if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency must be made a party to the action.

*Id.* at § 12.

In their brief, appellees neither acknowledge nor address the subject matter of this point of error. On the other hand, the T.E.A. fails to direct us to any proof in the record which shows that the Board's guidelines were "rules" adopted under the requirements of section 5 of the Act. That section requires notice of the intended rulemaking action to be filed with the Secretary of State, and published in the Texas Register. *Id.* at § 5(a). There are provisions also for submission of data, views,

and arguments by all interested persons and for public hearings if twenty-five or more persons request them. *Id.* at § 5(c). Additionally, the agency, if requested to do so, shall issue a concise statement of the principal reasons for and against the rule's adoption, incorporating in the statement its reasons for overruling the considerations against its adoption. *Id.* And finally, the agency order adopting the rule must include a reasoned justification of the rule and a certification that the rule has been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority. *Id.* at § 5(c–1)(1) & (3). It is then expressly provided that a rule, not adopted in substantial compliance with the section, is invalid. *Id.* at § 5(e). We hold that, in the absence of a showing that the guidelines here in question constitute a "rule" adopted in conformity with section 5 of the Act, the exclusive Travis County jurisdiction provision is not applicable. Texas Education Agency's point of error two is overruled.

■ T.E.A. claims that the finding of an equal protection violation was erroneous. When this suit was filed, *State Board's* guidelines refused to recognize any type of educational program in the home as a private or parochial school. The classifications targeted by this suit may be stated therefore as (1) any type of private or parochial home school and (2) any type of private or parochial campus school. Parents of children being educated in the former were subject to prosecution; parents of children being educated in the latter were not. Therein lay the classification attacked as failing to provide equal protection to parents of children in the home schooling classification.

We pause to set forth generally accepted guiding principles underlying an inquiry into the concept of equal protection as set out in *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–54, 30 L.Ed.2d 225, 229 (1971).

In applying that clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

*Id.* (citations omitted).

The specific question presented in this case, then, is whether a difference in the locus of a private educational enterprise bears a rational relationship to a state objective of compelling the education of its school-age children in private or parochial schools if they do not attend public schools. This is so because the characteristics, curriculum, teacher qualification, administration, operation, or effectiveness of any private school or parochial school are not subject to control or supervision by the Texas Education Agency since its statutory authority extends only to public education. *See* TEX.EDUC.CODE ANN. § 11.02(a) (Vernon 1991). Significantly, the Agency recognizes its lack of authority regarding private school education as formally stated in the following policy:

§ 65.2. Recognition for Compulsory Attendance

A nonpublic school shall be recognized as satisfying the requirements of the compulsory attendance laws when the basis for instruction is the English language, and the instructional program includes a study of good citizenship.

Texas Educ. Agency, 19 TEX.ADMIN.CODE § 65.2 (West Sept. 15, 1988) (Recognition for Compulsory Attendance).

It becomes apparent, therefore, that the state agency could have no official knowledge of the exact nature of either a home private school or a traditional campus-type

private school since neither were subject to state monitoring. Under those circumstances, it is obvious that the distinction was made on the sole basis of location within a home or outside the home. In its brief, T.E.A. makes no reference to evidence produced by it to justify that distinction.

We therefore hold that such ground of difference does not have a fair and substantial relation to the object sought, namely, the education of all school-age children in either a public school or a private or parochial school, with the result being that all parents of children receiving education in private or parochial schools were not treated alike under the policy in existence when this suit was filed, thus depriving home school parents of equal protection under the law.

T.E.A. argues that even if an equal protection problem formerly existed, it was resolved by the Board of Education's 1986 resolution, under which all of the named plaintiff home schools admittedly would qualify under the private or parochial school exemption. This argument is flawed by the fact that a resolution may be undone by a future resolution, and thus has no inherent permanency. Moreover, the resolution lacks any legal significance as a statement of general applicability since it was not adopted in conformity with the Administrative Procedure and Texas Register Act, TEX.REV.CIV.STAT.ANN. art. 6252–13a.

In view of our holding that plaintiff home school parents have established a section 1983 cause of action by showing a violation of the equal protection doctrine, we need not address their due process claim. T.E.A.'s point of error four and school districts' point of error three are overruled.

■ The school districts' attack upon the substance of the declaratory judgment is the subject of their point of error four. The districts state that the court erred because its definition of the term "in attendance upon a private or parochial school ... is unsupported by legally or factually sufficient evidence." The salient features of the court's declaration are "a school-age child ... who is pursuing under the direction of a parent ... in or through the child's home in a bona fide ... manner a curriculum ... designed to meet basic education goals of reading, spelling, grammar, mathematics and a study of good citizenship, is in attendance upon a private or parochial school within the meaning of Section 21.033(a)(1)." The declaration is based upon the court's finding of fact number one, that in 1915, when the compulsory attendance statute was enacted, a school-age child who was being educated in his or her home using a curriculum designed to meet basic education goals of reading, spelling, grammar, mathematics, and civics (a study of good citizenship) was considered to be in a private school.

Dr. Raymond Moore, an expert called by appellees, testified that at the turn of the century less than ten percent of the school population in Texas was in public schools and that a child being taught at home was considered to be in a private school. He testified that a plan of home instructions designed to meet basic education goals of reading, spelling, grammar, mathematics, and study of good citizenship was considered a private school. He also testified that the 1910 Webster's unabridged dictionary defined "school" as a place for instruction in any branch of knowledge. Another expert, Dr. Samuel Blumenfeld, author of six books on education, testified that from 1900 to 1925 private education consisted of parochial schools, home schooling, and academies and that they addressed the basic subjects of reading, writing, arithmetic, and history.

Dr. Rousas John Rushdoony, author of more than thirty published books in the field of education, also testified that in the period from 1900 to 1925, education in the private sector included Catholic and Protestant schools, and family schools in which the basic subjects were reading, writing, spelling, grammar, arithmetic, and civics.

There is no evidence in the record suggesting that the curricula in use by the named plaintiff home school parents was not designed to meet basic education goals

of reading, spelling, grammar, mathematics, and a study of good citizenship. Under the well-recognized standards of review of legal and factual insufficiency of evidence points, we hold that there is ample evidence to support the court's finding of facts upon which its declaratory judgment rests. The school districts' point of error four is overruled.

School districts' point of error five assails the granting of injunctive relief against a class of defendants in favor of plaintiff classes "because the evidence was legally and factually insufficient to establish the prerequisites for such class-wide injunctive relief." In addressing this point, we set out below the pertinent provisions of TEX.R.CIV.P. 42 entitled *Class Actions:*

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[5]

. . . .

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

*Id.* Specifically singled out and questioned by the school districts are: Commonality of the parents' claims; typicality of the parents' claims; numerosity of the home school providers; commonality of the provider class; and the failure of the parents' class and school districts' class to meet the requirements of rule 42(b)(2).

In support of the claim regarding commonality the school districts argue "even if the named Plaintiff Parents succeeded in establishing that their own children are attending private schools, the record does not and could not establish that the children of the other putative class members are also attending school by any generalized proof. Such a determination could only be made by examination of the specific situation of each family." This contention seems to confuse membership in a class of plaintiffs with the nature of relief provided to a class. By its certification order, the court certified the named plaintiff parents "to bring this lawsuit on behalf of all persons who are teaching their children at home in the State of Texas." The commonality and typicality of interests of such a broad class could hardly be more evident—all of them were at risk of prosecution under the existing policy which declared their children could not be considered in attendance upon a private or parochial school. In granting relief to the class by declaring a home school is considered a private school under specific circumstances, the court was not required to identify and specify which members of the class would benefit from its judgment, but only to declare the rights of those who fit the benefitted category of home school parents. The discretion of the court to refine the characteristics of the class ultimately benefitted by its judgment is evident from the provisions of subsection (d) of rule 42 permitting the original class to be divided into subclasses.

There was testimony that over 2000 Texas students were enrolled in home schools of the Christian Liberty Academy studying a standard school curriculum including mathematics, English related classes including grammar and reading and a study of good citizenship. The Calvert School of Baltimore, Maryland, was supplying the curriculum for its home instruction department to 252 home school children in Texas and 4200 nationwide. The above testimony alone is sufficient to support the court's definition of characteristics common and

---

5. These factors are generally called numerosity, commonality, typicality, and representation.

typical to the class which it found entitled to declaratory and injunctive relief. Numerosity is also shown by such testimony.

As to typicality, it is urged that a claim of a party is typical if it arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. It is further urged that a class representative must possess the same interests and suffer the same injury as the class members. We agree with those general statements regarding the typicality factor and find that they apply to the facts in this case. It was established that there were some eighty known instances of home school parent prosecutions based upon the guidelines that a home school could not be a private or parochial school. Those events give rise to the claims of all of the class of home school parents which are based upon the same legal theory, *i.e.*, the rights of home school parents to equal protection were being violated. The class representatives possessed the same interests as the class members, that is to be free from unwarranted prosecution and the threat of such prosecution, and the injury suffered by the representatives and class members was identical.

■ The additional claim is made that there is insufficient evidence to support the classwide injunctive relief. The focus of this claim is that "[t]o proceed under 23(b)(2) against a class of defendants would constitute the plaintiffs as 'the party opposing the class,' and *would create the anomalous situation* in which the plaintiff's own actions or inactions could make injunctive relief against the defendants appropriate." The above language does, in fact, appear in *Wiggins v. Enserch Exploration, Inc.*, 743 S.W.2d 332, 337 (Tex.App.—Dallas 1987, writ dism'd w.o.j.) as a quotation from the opinion in *Paxman v. Campbell*, 612 F.2d 848, 854 (4th Cir.1980), *cert. denied*, 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 117 (1981). In the same paragraph, the *Wiggins* court also wrote the following:

First, the language of 42(b)(2) can be read as providing that the "party *opposing* the class" must be the wrongdoer. If so, it would logically follow that the subsection is only available when relief is sought *in favor of* the class. *See, e.g., Stewart v. Winter*, 87 F.R.D. 760, 770 (N.D.Miss.1980). Accordingly, some courts have held that certification of a defendant class is outside the scope of this subsection. *See* Wright, Miller & Kane at § 1775 n. 15 and cases cited thereunder. For example, the Fourth Circuit has held that (b)(2) is restricted to cases *"when* a class of plaintiffs seeks injunctive relief against a single defendant—*the party opposing the class*—who *has acted* on grounds generally applicable to the plaintiff class." *Paxman v. Campbell*, 612 F.2d 848, 854 (4th Cir. 1980)....

*Wiggins*, 743 S.W.2d at 337 (emphasis in original).

If the *Wiggins* interpretation of *Paxman*, to the effect that: (a) certification of a defendant class is outside the scope of rule 42(b)(2); and that (b) the rule [6] is restricted to cases when a class of plaintiffs sues a single defendant, was valid at the time written, its validity is questionable at this time, in view of the Fourth Circuit Court's later expression in *Bazemore v. Friday*, 751 F.2d 662, 669 (4th Cir.1984) as follows:

In *Paxman* ... we held that a class of defendants of 130 Virginia school boards was inappropriate when each was free to adopt maternity leave policies of entirely unknown differences or similarities, it being uncontradicted there was no statewide policy in force, centrally directed or otherwise. The Sixth Circuit followed *Paxman* in *Thompson v. Board of Education, etc.*, 709 F.2d 1200 (6th Cir.1983) upon the same fact situation obtaining in *Paxman*. While these two cases were decided under a different part of the class action rule, the principle remains the same, that to have a proper class of

6. Federal Rules of Civil Procedure, rule 23(b)(2) is identical to Texas Rules of Civil Procedure, rule 42(b)(2).

defendants in a case such as this there must be either a statewide rule or practice so that relief is available if the rule or practice is invalid, or the adjudication with respect to a member of a defendant class must as a practical matter be dispositive of the interests of the other members of the class as provided in FRCP 23(b)(1)(B).

*Id.*

In light of the clarification of the *Paxman* holding, it appears that the instant case presents the very situation that brings it within the purview of federal rule 23(b)(2) in that here we have indeed a statewide policy towards plaintiff parents established by T.E.A., to which policy each school district and attendance officer is bound to adhere in their treatment of plaintiff parents. Accordingly, we do not find *Wiggins* to be a valid impediment to utilization of Texas rule 42(b)(2) in this case.

In so holding, we find support in several other federal cases. The first is *Marcera v. Chinlund,* 595 F.2d 1231 (2nd Cir.), *vacated on other grounds sub nom. Lombard v. Marcera,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979). In *Marcera,* the court approved certification of a class of defendants under rule 23(b)(2) in an action by the inmate plaintiff class to enjoin a defendant class of forty-seven sheriffs to comply with a program of contract visitation for pretrial detainees. In doing so, the court wrote, "And although a literal reading of the rule might indicate otherwise ... it is now settled that 23(b)(2) is an appropriate vehicle for injunctive relief against a class of local public officials." *Id.* at 1238. Cited in support of the above statement were several publications and cases including *Washington v. Lee,* 263 F.Supp. 327 (M.D.Ala.1966), *aff'd,* 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968).

*Washington* was a case in which six persons—five blacks and a white—who were confined in either a state penal institution, a county jail, or a city jail, as representatives of a class, sought relief from racial discrimination. Defendants were a named sheriff, a named warden of a city jail, and the chief administrator of the Alabama Board of Corrections as representatives of the class of all sheriffs and wardens in the state of Alabama. As against the contention that the named defendants were not representative of all wardens, jailers, and sheriffs in the state and therefore the suit could not be maintained as a class action within the meaning of rule 23, the trial court held that if questions of law or fact are common to the named defendants and the class they represent, it is immaterial whether certain of the defendant class are not otherwise identically situated. In affirming the judgment, the United States Supreme Court wrote "[t]he State's contentions that Rule 23 of the Federal Rules of Civil Procedure, which relates to class actions, was violated in this case ... are without merit." *Washington,* 390 U.S. at 333, 88 S.Ct. at 994.

Appellants bring to our attention another case in which the compulsory school attendance law of Missouri was challenged and the plaintiffs sought certification under federal rule 23(b)(2) of a defendant class made up of all juvenile officers, guardians ad litem appointed by juvenile courts, school officials, the Division of Family Service employees, and local law enforcement officers who are delegated power to investigate parents who choose to offer their children, at home, an education that is Christ-centered and based upon the Holy Bible. *Ellis v. O'Hara,* 105 F.R.D. 556 (E.D.Mo.1985). The *Ellis* court wrote as follows:

This Court holds that the typicality requirement for the defendant class certification is lacking herein. Under the facts of the case, the various juvenile officers, for example, are responsible for performing their duties within their limited jurisdictions. Such juvenile officers are by no means responsible for investigating individuals outside of their jurisdiction. The same holds true for the other categories of defendants. In *LaMar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir.1973), the court held that plaintiffs were not entitled to bring a class action against defendants with whom they had no dealing. *Id.* at 464. Likewise in *Thillens, Inc. v. Community*

*Currency Exchange Assoc. of Illinois, Inc.,* 97 F.R.D. 668, 675 (N.D.Ill.1983), the court found that a defendant class was improper unless each named plaintiff had a claim against each defendant class member. *See also In re Gap Store Securities Litigation,* 79 F.R.D. 283, 293–95 (N.D.Cal.1978). Plaintiffs have not even attempted to assert that the Bowles, for example, have a claim against each member of the defendant class. For this reason alone, plaintiffs have failed to establish each of the pre-requisites necessary for certification of a defendants' class.

*Id.* at 563–64. Overlooked by the *Ellis* court is the recognition, in both *LaMar* and *Thillens,* that there is an exception to the rule that a defendant class is improper unless each named plaintiff has a claim against each defendant class member. Such exception is described in *Thillens* as follows:

> The requirement that each named plaintiff must have a claim against each defendant may be waived where the defendant members are related by a conspiracy or "juridical link."
>
> A "juridical link" is some legal relationship which relates all defendants in a way such that single resolution of the dispute is preferred to a multiplicity of similar actions.

*Thillens, Inc. v. Com. Currency Exch. Ass'n,* 97 F.R.D. 668, 675–76 (N.D.Ill.1983). For examples of such juridical links, *see Broughton v. Brewer,* 298 F.Supp. 260 (N.D.Ala.1969) (the Governor of Alabama, the Attorney General of Alabama, and various Mobile County and city officials); *Samuel v. University of Pittsburgh,* 56 F.R.D. 435 (W.D.Pa.1972) (all state and state related universities and colleges in the Commonwealth of Pennsylvania similarly situated); and *Washington,* 263 F.Supp. 327 (Commissioners of Corrections, members of the Board of Corrections, all county sheriffs

and wardens and jailers of city and town jails in the state). In the light of the above authorities we decline to follow the limited application of the rule in *Ellis,* and we hold the evidence sufficient to support the judgment against the defendant class in favor of the plaintiff class of home school parents.

The final contention of this point of error is directed at the providers class and asserts lack of evidence regarding numerosity and commonality to support a judgment for injunctive relief. This contention lacks merit because the only injunctive relief provided is aimed solely at unwarranted initiation of proceedings by school districts against the home school parents class. No injunctive relief was given to the providers. Point of error five is overruled.

 It is next contended in the school districts' point of error seven that the trial court erred in awarding attorneys' fees and expenses to the plaintiffs as against the school district defendants pursuant to 42 U.S.C.S. § 1988 (1989),[7] because plaintiffs did not establish by legally or factually sufficient evidence that the school district defendants had violated any of plaintiffs' federal civil rights. This contention is not sustainable in view of our earlier holding that initiation of prosecution of plaintiff parents violates the parents' equal protection rights by establishing an unreasonable and arbitrary classification of parents which is not rationally related to any state interest. It is urged, however, even if there has been an unconstitutional deprivation pursuant to an official policy or custom such policy or custom is that of T.E.A., a state agency, and not that of the school districts. More specifically, it is claimed, no evidence was presented and no finding made that the school districts did or could have enacted any policy on the subject and that the attendance officers looked to the interpretations of the T.E.A. in discharging

---

**7.** Pertinent excerpts of section 1988 are the following:

Sec. 1988 Proceedings in vindication of civil rights; attorney's fees

In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980 and 1981 of the Revised Statutes [42 USCS secs. 1981–1983, 1985, 1986] ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. *Id.*

their obligations pursuant to the compulsory attendance law. Cited for the school districts' proposition that "local School Districts are not responsible for any constitutional infirmities in the *state's* compulsory school attendance statutes or policies" is *Fellowship Baptist Church v. Benton*, 815 F.2d 485, 499 (8th Cir.1987). In that case, however, the school district was a prevailing defendant, and the issue was limited to the propriety of awarding attorneys' fees under section 1988 to a prevailing defendant upon a finding that the plaintiffs' action was frivolous, unreasonable or without foundation. In its discussion of the frivolousness issue, the *Fellowship* court wrote the following:

> Moreover, we fail to see the necessity of joining a local school district as a party when the gravamen of plaintiffs' complaint, the relief they requested, and all of the arguments they presented to the district court and to this Court on appeal are directed solely to actions of the State of Iowa.

*Id.* Under these circumstances we find the above language of no precedential value in the context of our present inquiry. We do find, however, that the case of *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980) is pertinent to whether the school districts have sole responsibility to pay attorneys' fees. That case arose out of efforts of Familias Unidas, a loosely structured organization of Mexican–American students and adults, to seek reform and to air grievances of the City of Hondo's Chicano community with respect to the operation of the Hondo public schools. After a stu-

dent walk-out, planned and aided by several members of Familias Unidas, the Board of Trustees of the Hondo Independent School District filed suit to enjoin the continuation of the boycott. The Board also requested that Medina County Judge Jerome Decker invoke TEX.EDUC.CODE ANN. § 4.28 (Vernon 1972) [8] to compel disclosure of the names of all of the officers and members of Familias Unidas, the organization known to be sponsoring the boycott. Judge Decker, in accordance with the authority given to him by the statute, called upon Irma Torrez, chairman of the organization to provide all of the statutory information to him for disclosure to the public. Torrez and Familias Unidas then filed suit in federal court under section 1983 against former Governor Briscoe, Judge Media, and the school district board of trustees. Torrez sought damages and both plaintiffs sought a declaration of unconstitutionality of the statute as in derogation of the first amendment guarantees of freedom of association. On appeal, the Fifth Circuit Court held the statute to be unconstitutional, and awarded only nominal damages to Torrez and costs and attorneys' fees to both plaintiffs. The court held that, although the doctrine of sovereign immunity and the protection of the eleventh amendment absolved the state from liability to pay damages, they did not stand as bars to the payment of attorneys' fees under section 1988, citing *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). The court then stated the following:

> Accordingly, Hondo Independent School District and the State of Texas will actu-

---

8. Sec. 4.28. Interference with the Peaceful Operation of the Public Schools

(a) In order to maintain law, peace, and order in the operation of the public schools without the use of military force, the county judge of each county in this state is authorized to require any organization, operating or functioning within the county and engaged in activities designed to hinder, harass, or interfere with the powers and duties of the State of Texas in controlling and operating its public schools to file with the county clerk, within seven days after such request is made, the following information, subscribed under oath before a notary public:

(1) the official name of the organization and list of members;

(2) the office, place of business, headquarters, or usual meeting place of the organization;

(3) the officers, agents, servants, employees, or representatives of the organization;

(4) the purpose or purposes of the organization; and

(5) a statement disclosing whether the organization is subordinate to a parent organization and, if so, the name of the parent organization.

....

(c) The information filed pursuant to Subsection (a) of this section is hereby declared public and subject to the inspection of any interested party.

*Id.*

ally be responsible for plaintiffs' attorney's fees. Of course, since we have held Medina County not to be susceptible to this section 1983 suit under *Monell*—because Judge Decker's actions did not implement or constitute an official county policy—the county will share no responsibility for plaintiffs' fees and costs. *Familias Unidus,* 619 F.2d at 406. We are asked to favorably compare the position of the county and county judge in *Familias* with that of the school districts in the case before us and absolve the school districts from liability. This we cannot do because we interpret the *Familias* rationale to be that although the unconstitutional statute established a state policy, the state policy was implemented by the Hondo school districts' request to the county judge to carry out the policy. By analogy, where the T.E.A., a state agency, has adopted the unconstitutional policy as in this case, the school districts implemented the offending policy by requesting prosecution to carry out the policy. It is in this manner that the defendant school districts participated in the unconstitutional deprivation of plaintiff parents' rights and acquired liability for attorneys' fees when the plaintiffs became the "prevailing party" under section 1988. Point of error seven is overruled.

■ Appellant school districts next attack the award of attorneys' fees against them pursuant to Tex.Civ.Prac. & Rem.Code Ann. § 37.009 (Vernon 1986)[9] because such award is not just and equitable. They point out that the statute is permissive only, and that even a losing party may be awarded such fees so long as the award is equitable and just. *See District Judges v. Commissioners Court,* 677 S.W.2d 743, 746 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). It is also pointed out that the focus of plaintiffs' complaints was on T.E.A. and not upon the school districts who were simply following T.E.A. guidelines as they were required to do, and further, that substantial school district funds had already been diverted from public education to legal defense fees and expenses. To require the school children and taxpayers of the school districts to undergo further loss, it is urged, would not be equitable or just.

Indicative of the specific posture of appellant school districts in the presentation of this point is the following language of their brief:

The trial court found that *only* the conduct of the Texas Education Agency was arbitrary, capricious, unreasonable, and amounted to bad faith and harassment (Findings of Fact Nos. 34–36, 18 Tr. 4520–21). No similar findings were made as to the School District Defendants. Requiring *them* to pay attorneys' fees clearly amounted to an abuse of discretion.

Although the above language approaches, it does not cross, the threshold of an assertion that it is unjust or inequitable to exclude T.E.A. from the burden of paying all or part of the attorneys' fees. Consequently, we are not called upon to address such issue. We hold that under these circumstances, the award of attorneys' fees and costs to appellee home school parents for securing redress of deprivation of constitutional rights, such fees and costs to be borne by the 1060 school districts, is equitable and just. Point of error eight is overruled.

■ Point of error nine contends that the award of $360,000 as attorneys' fees and expenses was error because the evidence is factually and legally insufficient to establish that "said amount is reasonable and necessary." It was agreed that each party's attorney could testify as to his fees without calling other experts. In fact, two attorneys' testimony in that regard was accepted in affidavit form. Post-trial affidavits were accepted to complete the evidence of fees earned up to the appeal of the case. Counsel for appellees testified at length and was extensively cross-examined

9. Sec. 37.009 Costs
In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.

*Id.* "Chapter" refers to the Uniform Declaratory Judgment Act, Civil Practices and Remedies Code, ch. 37.

regarding his activities and services from January 27, 1985, the date of his being retained, through January 13, 1987. He then introduced into evidence statements and over 350 itemized time sheets detailing time, services, and expenses. No objection was lodged regarding the nature or sufficiency of the proof made by appellees as to the matter of fees or expenses. The sum awarded is in accordance with the evidence presented. We conclude, from appellant school districts' argument under this point, that the point is not actually an evidence sufficiency point, but rather a three-pronged complaint directed at: (1) failure to segregate attorneys' fees and expenses as to claims and parties; (2) failure to eliminate time spent on noncompensable work; and (3) failure to eliminate expenses not recoverable as a matter of law.

As to (1) above, the holding in *Flint & Assoc. v. Intercon–Pipe & Steel*, 739 S.W.2d 622 (Tex.App.—Dallas 1987, writ denied) is significant. There it was said as follows:

> As a rule, in a case involving more than one claim, attorney fees can be awarded only for necessary legal services rendered in connection with the claims for which recovery is authorized. *Int'l Sec. Life Ins. Co. v. Finck*, 496 S.W.2d 544, 546–547 (Tex.1973). The party seeking attorney fees must present evidence of a reasonable fee for only those services necessarily rendered in connection with the claim for which recovery of attorney fees is authorized, segregated from those services rendered in connection with other claims. *Id.* A corollary to the rule is that the services for which reasonable fees may be awarded include those rendered in connection with all claims, even if recovery of attorney fees is not authorized for such claims, if they arise out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *Wilkins v. Bain*, 615 S.W.2d 314, 316 (Tex.Civ.App.—Dallas 1981, no writ); *Williamson v. Tucker*, 615 S.W.2d 881 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); *Triland Inv.*

*Group v. Warren*, 742 S.W.2d 18 (Tex. App.—Dallas 1987).

*Id.* at 624–25. In the case before us we hold the record establishes the applicability of the corollary above stated, since all of appellees' claims arose out of the same fact situation and were all interrelated. As to (2) and (3) above, the record shows cross-examination of appellees' attorney as to a number of purportedly noncompensable charges and nonrecoverable expenses, but in no instance was there an objection, motion to strike, or other action taken to present to the trial court any of the complaints now made on appeal. Under such circumstances any error in that regard was waived. Point of error nine is overruled.

The court's failure to award attorneys' fees and expenses to the appellant school districts is the subject of their final point of error. Such purported error is predicated upon the claimed failure of appellees to establish a section 1983 cause of action. Having previously held to the contrary, we must overrule this point.

The judgment of the trial court is affirmed.